460 S.E.2d 677

**STATE of West Virginia ex rel. UNITED STATES FIDELITY AND GUARANTY COMPANY and Tim Linsky, Relators,**

v.

**Honorable Herman G. CANADY, Jr., Judge of the Circuit Court of Kanawha County, and Robert M. Lovell, Respondents.**

No. 22867.

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided July 11, 1995.

**434**

James D. McQueen, Jr., Lisa A. Moncey, Joseph K. Reeder, McQueen & Brown, L.C., Charleston, for relators.

George B. Morrone III, Kenova, Amy M. Herrenkohl, Barboursville, for respondents.

CLECKLEY, Justice:

In this original proceeding for a writ of prohibition, we are asked to vacate an order entered on April 21, 1995, by the respondent judge, the Honorable Herman G. Canady, Jr., of the Circuit Court of Kanawha County, directing counsel for the defendants below and the relators herein, United States Fidelity and Guaranty Company (USF & G) and Tim Linsky, an adjuster for USF & G, to produce four documents they assert are protected by the attorney-client privilege and/or the attorney work product exception. The order does not state any of the respondent judge's reasons for directing the relators to produce the documents other than it was "[u]pon mature consideration ... and after hearing argument of counsel[.]" The relators contend they will suffer irreparable harm if they are forced to disclose the documents. We issued a rule to show cause and now grant the writ of prohibition.

I.

## FACTS AND PROCEDURAL BACKGROUND

The underlying claim arose from a dispute over fire insurance coverage between USF & G and the plaintiff below and the respondent herein, Robert M. Lovell. On April 14, 1992, a residential dwelling owned by Mr. Lovell and insured by USF & G was destroyed totally by fire. As a result, Mr. Lovell filed a claim with USF & G to collect the proceeds under his insurance policy. Mr. Linsky was assigned to adjust the claim.

For various reasons, USF & G suspected the fire may have been the result of arson and, thus, did not pay Mr. Lovell the proceeds of his insurance policy pending an investigation. USF & G employed its Special Investigations Unit (SIU) and, on or about July 1, 1992, retained Craig McKay, a lawyer, to investigate the claim. On November 6, 1992, after nearly seven months without receiving the insurance proceeds, Mr. Lovell filed a civil action against USF & G and Mr. Linsky. In his action, Mr. Lovell alleged breach of contract, unfair trade practices, and other general claims of bad faith insurance practices.

According to the relators, on November 4, 1992, two days prior to Mr. Lovell filing his suit, it was decided that USF & G would pay the claim contingent upon the outcome of certain scientific testing. After receiving the test results, the relators maintain the SIU gave the claim back to an adjuster on November 8, 1992, for disposition. To the contrary, Mr. Lovell strongly contests USF & G's assertion that it decided to cover the claim prior to his suit.

On or about November 10, 1992, USF & G retained James D. McQueen, Jr., another lawyer, to defend and advise it with regard to the civil action brought by Mr. Lovell. By affidavit, Mr. McKay states he was relieved of his responsibilities after he learned of the pending lawsuit, which occurred on or about November 9, 1992. On November 12, 1992, Mr. McKay sent William Kimmel, a senior claims examiner for USF & G, a document entitled *"LITIGATION REPORT."* Mr. McKay averred that this document summarizes the facts of the case, his activities, his mental impressions and opinions, and his evaluation of the pending bad faith action. Due to the nature of the report, the relators assert Mr. McKay acted in his capacity as a lawyer, and, thus, the report is protected by the attorney-client privilege. On the other

hand, Mr. Lovell argues that an insurance company "should not be permitted to protect its claims file generated during the adjustment and investigation of a fire loss claim, simply because it hired an attorney to perform the factual investigation into whether the claim should be paid."

The report written by Mr. McKay is only one of four documents at issue in this case. The other three documents include: A letter written by Mr. McQueen, dated November 25, 1992, and sent to Bob Siems, USF & G's in-house counsel, and Mr. Kimmel; an electronic mail message from Mr. Kimmel to Mr. Siems, which references the letter written by Mr. McQueen; and a copy of the November 25, 1992, letter from Mr. McQueen to Mr. Kimmel and Mr. Siems via a facsimile transmission from Mr. McQueen to Mr. Linsky. All four documents were prepared after suit was filed. The relators assert all the documents are protected by the attorney-client privilege and, because they were prepared in anticipation of litigation, also are protected by the work product doctrine.

On or near December 8, 1992, USF & G agreed to pay Mr. Lovell the full limits of his policy for his property losses. In spite of this agreement, Mr. Lovell maintained his action against USF & G and Mr. Linsky for bad faith and unfair trade practices. For more than two years, the parties participated in discovery on Mr. Lovell's remaining claims. Problems arose, however, when the relators refused to produce certain documents maintaining the documents were not discoverable because they are protected under the attorney-client privilege and/or the work product doctrine.[1] During the course of discovery, the relators produced numerous documents, including post-suit documents. On August 24, 1994, the respondent judge

endorsed a stipulation by the parties that the documents referenced by the stipulation would not by their identification or production "act as a waiver of any privilege for which the parties are entitled as a matter of law." Of those who are affiliated with the four documents at issue in this case, Mr. Lovell asserts that all except for Mr. McQueen were identified as witnesses by the relators and were deposed.

On April 14, 1995, the circuit court held an *in camera* hearing to inspect the documents in controversy. The documents were filed under seal and were not shown to Mr. Lovell or his counsel. Upon review of the documents, the circuit court ruled the four documents are discoverable and should be disclosed.[2] The relators now seek a writ of prohibition from this Court to prevent the disclosure of those documents.[3]

In his reply to the relators' petition for a writ of prohibition, the respondent judge said that, in addition to his remark that he "found the documents to be 'highly relevant,' ... the record reflects [he] ... meant to say [that the] plaintiff is probably going to need the documents in order to meet his burden of proof, and that this conclusion was drawn after careful and conscientious consideration of the facts[.]" Thus, the respondent judge asserts that, although it was not explicitly articulated, Mr. Lovell demonstrated a " 'substantial need' " for the documents. Moreover, the respondent judge requests this Court to allow him to exercise his discretion in this matter and permit the relators to seek appellate review by a writ of error.

## II.

### DISCUSSION

Our issuance of the show cause order allowed us to hear oral arguments on the

1. According to Mr. Lovell's brief, USF & G and Mr. Linsky claimed thirteen documents are protected from discovery, but only nine of those documents are alleged to be protected under the attorney-client privilege and/or the work product doctrine.

2. In the order entered on April 21, 1995, the respondent judge indicated he would consider the relators' request to redact portions of Mr. McKay's report.

3. At the *in camera* hearing held on April 14, 1995, the respondent judge stated:
   "[Mr. McKay's report] certainly is the thing that reveals the thinking of the defendants concerning the value that they put on the case and when they put it, and even though it is dated November 12, 1992, it relates back to meetings prior to that and I suspect, of all of the things that would have relevancy to this type of case, this would be the document I suspect it will have to be revealed if this is going to pan out to be a bad faith case."

appeal of this case so that we can address the very important issues raised. The relators now challenge the circuit court's disclosure order on two separate grounds. First, the relators claim that the ordered disclosure of the documents violates the attorney-client privilege because the documents are communications among attorneys and their clients. Second, the relators claim that, even if the attorney-client privilege is not applicable to all the documents sought, the documents are protected from disclosure under the work product exception. In support of this assertion, the relators argue all the documents were prepared either in anticipation of litigation or during litigation. In addition to these claims, the relators suggest the circuit court used the wrong legal criteria in deciding the documents were discoverable. After considering some preliminary matters, we will consider these arguments in turn.

### A.

#### Criteria for Awarding a Writ of Prohibition

Our first determination must be whether a writ of prohibition is an appropriate remedy to address the issues raised by the relators. Our authority to issue a writ of prohibition and entertain other matters of original jurisdiction stems from Section 3 of Article VIII of the West Virginia Constitution, which states in relevant part: "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari." The Legislature more specifically delineated and codified this right in W.Va.Code, 53–1–1, et seq.[4]

■ In our landmark case of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979), we articulated the general criteria this Court will apply to decide if we should issue a rule to show cause in prohibition. In Syllabus Point 1, we stated:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

*See also State ex rel. Doe v. Troisi*, 194 W.Va. 28, 459 S.E.2d 139 (1995); *State ex rel. Smith v. Maynard*, 193 W.Va. 1, 454 S.E.2d 46 (1994). We have limited, however, the exercise of our original jurisdiction in prohibition to circumstances "of an extraordinary nature." *Troisi*, 194 W.Va. at 31, 459 S.E.2d at 142, *citing State ex rel. Allen v. Bedell*, 193 W.Va. 32, 36–39, 454 S.E.2d 77, 81–84 (1994) (Cleckley, J., concurring), and *quoting Ex parte Collett*, 337 .U.S. 55, 72, 69 S.Ct. 944, 953, 93 L.Ed. 1207, 1217 (1949), *quoting Ex parte Fahey*, 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041, 2043 (1947) (" ' "[m]andamus, prohibition and injunction against judges are drastic and extraordinary remedies.... As extraordinary remedies, they are reserved for really extraordinary causes" ' ").

■ In the present case, the relators cite *State ex rel. McCormick v. Zakaib*, 189 W.Va. 258, 430 S.E.2d 316 (1993), for the proposition that this Court may issue a writ of prohibition when a trial court abuses its discretion with regard to discovery. In Syllabus Point 3 of *McCormick*, we said:

" 'A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders.' Syllabus Point 1, *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992)."

The relators also cite *Nutter v. Maynard*, 183 W.Va. 247, 250, 395 S.E.2d 491, 494 (1990), in which we acknowledged we may grant " 'extraordinary relief where a discov-

---

4. W.Va.Code, 53–1–1 (1923), provides: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

ery order presents a purely legal issue in an area where the bench and bar are in need of guidelines....'" *Quoting State ex rel. Bennett v. Keadle,* 175 W.Va. 505, [508,] 334 S.E.2d 643, 646 (1985). Nevertheless, as we stated in *Troisi,* 194 W.Va. at 32, 459 S.E.2d at 143, "[w]hen jurisdiction is not at issue, then the issuance of a writ is discretionary ... and is governed by the practical circumstances of the case." (Citation omitted). Moreover, prior to granting a writ, "we must apply the aforementioned standards and ascertain whether there is a clear-cut error that needs resolution where alternate remedies are inadequate and judicial economy demands resolution." 194 W.Va. at 32, 459 S.E.2d at 143. (Citations omitted).

Orders granting discovery requests over timely objections, like other discovery orders, are interlocutory. They do not finally end the litigation and are generally reviewable only after the final judgment. *See* W.Va. Code, 58–5–1 (1925); *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995); *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990). If a final judgment is favorable to a party who previously objected to a discovery order, the order may never become the subject of an appeal. Thus, for reasons predicated partly on judicial economy, our general rule necessarily must be that discovery orders are not appealable until the litigation is finally ended.

■ Consistent with our prior decisions,[5] we carve out today a specific exception to the general rule: When a discovery order involves the probable invasion of confidential materials that are exempted from discovery

under Rule 26(b)(1)[6] and (3)[7] of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate. The reason for this exception is apparent: If the privilege and/or immunity to keep confidential materials from being delivered to the opponent pursuant to court order is not vindicated before the violation occurs, then this sacred privilege and/or immunity is no privilege and/or immunity at all but a cruel illusion.[8] In short, the attorney-client privilege and the work product exception would be lost forever if the offended party is forced to "run the gauntlet" before having an opportunity to seek redress before this Court.

■ The case at hand fits neatly in this doctrinal framework. Confronted with a timely assertion that limned, patently non-frivolous claims of the attorney-client privilege and work product immunity, the circuit court denied the relators any and all relief and ordered the discovery to immediately take place. Moreover, inasmuch as the circuit court's failure to provide the relators their requested relief stemmed from its apparent mistaken view of the law and from its failure to made adequate findings of fact on the issues, any challenge to our jurisdiction founders. Thus, we exercise our original jurisdiction to resolve the issues raised by the relators.

### B.

*Burden of Proof and Standard of Review*

■ At the outset, we note that both the common law attorney-client privilege and the

---

**5.** *See State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992) (the standard of review in regard to discovery orders is clear error resulting from substantial abuse of discretion). In *Troisi,* however, we recognized an exception to this general rule exists when a pretrial discovery order will cause unwarranted damage by the disclosure of privileged materials and information and such damage cannot be cured in the normal appellate process.

**6.** For the relevant text of Rule 26(b)(1), see Section II(C), *infra.*

**7.** For the relevant text of Rule 26(b)(3), see Section II(D), *infra.*

**8.** If the relators wrongfully are compelled to produce records protected by either the attorney-

client privilege and/or the work product doctrine, the damage will occur upon disclosure, and a later appeal would be uneventful. In the area of communication privileges, "once the cat is out of the bag, it cannot be put back in." The only other alternative the relators have is to disobey the circuit court's order and to suffer a contempt citation or other sanctions. We do not believe it is necessary to leave the relators in this position. Thus, we find the relators have no other adequate means to obtain relief from the circuit court's order that compelled the disclosure of privileged information and work product. We also find the disputed questions involve important issues completely separate from the merits of the action which effectively are unreviewable on an appeal from a final judgment.

work product exception under Rule 26(b)(3) are to be strictly construed.[9] *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). As the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist. As Dean Wigmore admonished:

> "[T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 John H. Wigmore, *Evidence* § 2291 at 554 (McNaughton rev. 1961). (Footnote omitted).

We recognize the fundamental principle that "'the public ... has a right to every man's evidence.'" *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884, 891 (1950), *quoting* John H. Wigmore, *Evidence* § 2192 (3rd ed). "[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974). (Footnote omitted).

■ The claimant bears the initial burden of establishing the applicability of the attorney-client privilege or the work product exception. The claimant must show certain threshold requirements in order to avail himself or herself of the privilege or exception including a showing that the communication originated in confidence, that it would not be disclosed, that it was made by an attorney acting in his or her legal capacity for the purpose of advising a client, and that it remained confidential. Thus, the burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it.

■ Equally as important, however, is the significance courts give to privileges in judicial proceedings. The privilege forbidding the discovery of evidence relating to communications between an attorney and a client is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed. *See Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488, 491 (1888); Wigmore, *supra* § 2290 at 543. The privilege encourages a client to talk freely with his attorney so he may receive quality advice. *Upjohn Co.,* 449 U.S. at 389, 101 S.Ct. at 682, 66 L.Ed.2d at 591. *See* Edward W. Cleary, *McCormick on Evidence* § 87 at 204–05 (3rd ed. 1984). As the privilege serves the interests of justice, we must give it reasonable protection. Courts must work to apply the privilege in ways that are predictable and certain. "An uncertain privilege or one which purports to be certain, but results in widely varying applications by the courts is little better than no privilege." *In re von Bulow,* 828 F.2d 94, 100 (2nd Cir.1987).

Similarly, the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), guided the work product doctrine. The Supreme Court stated: "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510, 67 S.Ct. at 393, 91 L.Ed. at 462. We strongly agree.

What is at stake here are two important competing policies. One policy protects the integrity and fairness of the fact-finding process by requiring full disclosure of all relevant facts connected with the impending litigation. The other policy promotes full and frank consultation between a client and a legal advisor by removing the fear of compelled disclosure of information. "It is then the function of a court to mediate between

---

9. We do not have before us the question of the admissibility of the documents ordered to be disclosed, and we make no indication in that respect. We recognize that the introduction of

material evidence obtained either directly or indirectly through interference with the attorney-client relationship is usually a paradigm of the kind of prejudice that warrants a new trial.

them, assigning, so far as possible, a proper value to each, and summoning to its aid all the distinctions and analogies that are the tools of the judicial process." *Clark v. United States,* 289 U.S. 1, 13, 53 S.Ct. 465, 469, 77 L.Ed. 993, 999 (1933).

Appropriately, the respondents assert that decisions regarding discovery are discretionary calls for the circuit court. We repeatedly have asserted that the task of safeguarding the rights of litigants ultimately rests with the experienced men and women who preside in our circuit courts. In *McDougal v. McCammon,* 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995), we stated:

> "[T]he West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making ... procedural rulings. As the drafters of the rules appear to recognize, ... procedural rulings, perhaps more than any others, must be made quickly, without unnecessary fear of reversal, and must be individualized to respond to the specific facts of each case.... Thus, absent a few exceptions, this Court will review all aspects of the circuit court's determinations under an abuse of discretion standard." (Citations omitted).

Quite clearly, a circuit court's ruling on discovery requests is reviewed for an abuse of discretion; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. "The discretion that is normally given to a trial court's [procedural] decisions does not apply where 'the trial court makes no findings or applies the wrong legal standard[.]' " *McDougal,* 193 W.Va. at 238, 455 S.E.2d at 797, *quoting State v. Farley,* 192 W.Va. 247, 253, 452 S.E.2d 50, 56 (1994).

The justifications for committing decisions to the discretion of a circuit court are uniform but vary with the specific type of ruling. Although the standard of review in instances such as the present case generally falls under the "abuse of discretion" standard, in fact, the scope of review usually will be directly related to the reason why the specific type of ruling is committed to the circuit court's discretion in the first instance. *See Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 106, 459 S.E.2d 374, 383 (1995). Where our Rules of Civil Procedure display a preference for a particular outcome, our review of decisions under those rules is sometimes more searching.

We acknowledge there is arguably a tension between the substantial deference normally accorded to rulings where a circuit court has a superior vantage and the preference to bar privileged materials from discovery. We resolve any such tension by holding that when a circuit court's discovery ruling with respect to "privileged" materials will result in the compelled disclosure of those materials, a hard and more stringent examination will be given on appeal to determine if the circuit court abused its discretion.

In the present case, we are aware that the circuit court's basic concern is that the documents are important to a fair resolution of the issues and, for that reason, ordered their disclosure. In doing so, it appears the circuit court relied mostly on a relevancy standard in determining the protective status of these documents.[10] We say "appears" because the findings made by the circuit court in the April 21, 1995, order are

---

10. The circuit court, indeed, was correct that one important consideration in a discovery dispute is the relevancy of the information sought. *See State ex rel. Arrow Concrete Co. v. Hill,* 194 W.Va. 239, 460 S.E.2d 54. Relevance, however, is not the only consideration, and our rules explicitly protect against discovery of privileged materials. We stated in note 9 of *McDougal,* 193 W.Va. at 237, 455 S.E.2d at 796:

> "As a general proposition, any material is subject to discovery unless: (1) its discovery is *categorically prohibited or made conditional* by the discovery rules, or (2) the matter is so obviously irrelevant or the mode of discovery so ill-fitted to the issues of the case that it can

be said to result in 'annoyance, embarrassment, oppression, or undue burden or expense.' " (Emphasis added; citation omitted). One of the "categorical" prohibitions is privilege, and the work product exception is, of course, "conditional." Relevance is not the standard for determining whether evidence should be protected from disclosure as privileged, and it remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant, or even go to the heart of an issue. When properly raised by a claimant, a circuit court specifically should determine the applicability of each asserted privilege to any discovery request.

insufficient to support the decisions it made and to give this Court an adequate basis for appellate review. Indeed, the parties to this original action articulate a somewhat different understanding of what legal standard the circuit court used to make its rulings. Because the *nisi prius* roll is limited, if not completely silent, the relators asseverate that the circuit court used only a relevancy standard in resolving the discovery dispute. On the record before us, we cannot fully endorse either party's view. The circuit court's words have a cryptic quality and its findings are sufficiently recondite that they give us pause. To add to the confusion, the circuit court's decision as to the attorney work product immunity is non-existent. As a result of our inability to determine whether the circuit court used the correct legal criteria and because the findings are inadequate, any review of the lower tribunal proceedings must by necessity be plenary. *Farley,* 192 W.Va. at 253, 452 S.E.2d at 56.

■ Although what we have said to this point explains the need to dispense with our ordinary discretionary standard of review, we feel obliged to comment on a larger issue. Our message over the past year has been clear that judges should give reasons for judicial rulings that are not obviously correct or plainly within the scope of a judge's untrammeled discretion over managerial and other ministerial details of a judge's work. *See Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995); *McDougal, supra; Farley, supra.* Unless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous.

In the area of privilege, the need for a circuit court to delicately balance the interests of the parties, the Rules of Civil Procedure, and the policy concerns underlying the privilege involved is obvious. Circuit judges are well situated to regulate and control discovery requests to prevent abuses. More precisely, we are confident that circuit courts can and will balance these competing interests on the record where each ruling when challenged can be meaningfully reviewed by this Court. We do not think the burden of preparing meaningful findings of fact to justify overruling an assertion of the attorney-client privilege and/or work product exception is a heavy one. When claimed in good faith, there will be few cases in which it is proper to do so, and we have grave doubt that this case is one of those situations.

■ Nevertheless, we must decide how best to handle the situation at hand. Mindful as we are of the high stakes in this dispute, we decline the parties' invitation to speculate about what the circuit court did or did not mean. Likewise, we decline to insert ourselves into the breach by attempting, on a cold and inadequate record, to find the facts from scratch. Thus, we are left with no principled choice but to grant the writ of prohibition. Upon the request of the parties, the circuit court should conduct a new hearing so that it can make its reasons clear and evident.

It is a traditional and salutary practice of this Court to decline to answer important policy questions in original proceedings until the lower court has the opportunity to provide us with the full and established circumstances of the case. In cases such as this one, it would be difficult or even impossible for us to say abstractly and unconditionally that the circuit court abused its discretion in finding that a privilege does or does not bar discovery of the requested information. Only when a circuit court makes adequate findings can the impact of certain privileges upon individual litigants be reviewed with confidence that relevant considerations were not overlooked.[11] The circumstances of the case at bar underscore this concern.

For these reasons, we cannot give and should not give definite answers to the important questions presented. We do believe,

---

11. In exercising original jurisdiction in a petition for a writ of prohibition, it is not our task merely to decide who is right or wrong or what the law is. Rather, our primary obligation is to determine whether the lower judicial tribunal acted in excess of its authority. In the area of confidential communications, when the lower tribunal provides us with no clear justification for its actions, the need to grant the writ becomes compelling.

however, as a reviewing court, it is desirable to outline certain principles that should aid the circuit court that, if requested by the parties, must reconsider these issues.

## C.

### Attorney–Client Privilege

Both the attorney-client privilege and the work product exception protect litigants during discovery. Rule 26(b) of the West Virginia Rules of Civil Procedure, in pertinent part, provides:

"*Discovery scope and limits.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) In General. Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added).

In clear language, Rule 26 provides that privileged matters, although relevant, are not discoverable. As a result of this rule, many documents that could very substantially aid a litigant in a lawsuit are neither discoverable nor admissible as evidence. In determining what privileges or protections are applicable, we are obligated to look both at the rules themselves and to our common law. *See* W.Va.R.Evid. 501.[12]

■ As we recently stated in *Troisi,* 194 W.Va. at 35–36, 459 S.E.2d at 146–47, "[t]he attorney-client privilege is a common law privilege that protects communications between a client and an attorney during consultations. *See* W.Va.R.Evid. 501; *State v. Fisher,* 126 W.Va. 117, 27 S.E.2d 581 (1943)." (Footnote omitted). Communications made in confidence either by an attorney or a client to one another are protected by the privilege.[13] We further recognized in *Troisi,* 194 W.Va. at 36, 459 S.E.2d at 147, that the attorney-client "privilege protects the substance of communications" and, thus, it extends beyond the attorney to others who, at the attorney's direction, are aware of confidential information. *Citing United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1984), *vacated* 757 F.2d 600 (1985); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (privilege applies to investigators); Syl. pt. 3, *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988).[14]

■ The attorney-client privilege is a broad doctrine; however, it is not unlimited.[15] In Syllabus Point 2 of *State v. Burton,*

---

**12.** Rule 501 of the Rules of Evidence provides: "The privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law except as modified by the Constitution of the United States or West Virginia, statute or court rule."

**13.** For purposes of this privilege, it is not significant that the communication was that of an attorney rather than that of a client; nor is it significant that the communication was written rather than oral. In other words, all communications intended to be confidential between an attorney and a client made for the purpose of securing legal advice are protected under the privilege.

**14.** Syllabus Point 3 of *Marano, supra,* states: "Conversation or material delivered by a defen-

dant, at his attorney's direction, to a psychiatric expert retained by the attorney in preparation for a mental defense is within the attorney-client privilege."

**15.** As stated in *In re Grand Jury Investigation,* 599 F.2d 1224, 1233 (3rd Cir.1979), *quoting United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950), the traditional elements of the attorney-client privilege that identify communications that may be protected from disclosure in discovery are:

" '(1) [T]he asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his [or her] subordinate and (b) in connection with this communication is acting as a lawyer; (3) the

163 W.Va. 40, 254 S.E.2d 129 (1979), we stated:

> "In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential."

In note 11 of *Troisi,* 194 W.Va. at 36, 459 S.E.2d at 147, we added that to maintain an attorney-client privilege, "there must be no evidence that the client intentionally waived the privilege." *Citing* I Franklin D. Cleckley, *Handbook on West Virginia Evidence* § 5–4(E)(2) (1994).

▬ Due to the nature of this litigation, waiver may play a significant role in this discovery determination. A party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue. The classical example is where an attorney is sued by a client for legal malpractice. *See* 8 Wigmore, *supra* § 2327 at 638. A defendant also may waive the privilege by asserting reliance on the legal advice of an attorney. *Hunt,* 128 U.S. at 470, 9 S.Ct. at 127, 32 L.Ed. at 491 (client waived privilege when she alleged as a defense that she was mislead by counsel); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir.1992) (party's claim that its tax position was reasonable because it was based on advice of counsel puts advice in issue and waives privilege). *See generally,* Cleary, *supra* § 93 at 223–24.[16]

▬ Similarly, the attorney-client privilege protects only confidential communica-

tions. It does not necessarily protect acts incorporated in the communication. In *Upjohn Co.,* 449 U.S. at 395–96, 101 S.Ct. at 685–86, 66 L.Ed.2d at 595, we said:

> " [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.' " (Emphasis in original).

*Quoting Philadelphia, Pa. v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa. 1962).

▬ At the parties' request, therefore, the circuit court must reconsider the documents in light of the aforementioned criteria and make findings of fact on the record. Upon this Court's *in camera* review of the four documents in dispute, under seal, we are able to provide the circuit court, on the face of those documents, with some guidance as to their discoverability. It is clear that in the letter dated November 25, 1992, Mr. McQueen is advising his clients of his legal opinions with regard to coverage of Mr. Lovell's claim. In fact, as previously mentioned, one of the named receivers of the letter, Mr. Siems, serves as USF & G's in-house counsel. In addition, it appears Mr. McQueen was retained by the relators for the explicit purpose of handling the lawsuit filed by Mr. Lovell, and both the relators and Mr. McQueen obviously believed an attorney-client relationship was created when Mr.

---

communication relates to a fact of which the attorney [or the client] was informed (a) by his client [or attorney] (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.' "

*See also* 8 Wigmore, *supra* § 2292 at 554.

**16.** It is not clear whether the relators made the decision and took the affirmative step of placing the legal advice they received in issue. If this

occurred, the relators conceivably opened the door to the disclosure of facts relating to that advice. However, advice is not in issue merely because it is relevant, and it does not come in issue merely because it may have some affect on a client's state of mind. Rather, it becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication. *North River Ins. Co. v. Philadelphia Reins. Corp.,* 797 F.Supp. 363, 370 (D.N.J. 1992); *Pittston Co. v. Allianz Ins. Co.,* 143 F.R.D. 66, 71 (D.N.J.1992).

McQueen was hired to give his legal advice. Such communications between an attorney and a client are of the very type that are intended to be confidential and protected by the attorney-client privilege.

■ Both the electronic mail message and the facsimile transmission similarly seem to be protected by the attorney-client privilege. With regard to the facsimile transmission, Mr. McQueen merely sent a copy of the November 25, 1992, letter to Mr. Linsky, his client. This transmission did nothing to alter the nature of the protection afforded by the attorney-client privilege. An attorney certainly has the right to send a copy of a letter giving legal advice about pending litigation to his client who is a named defendant in the litigation.

■ The electronic mail message is protected under the principle that the privilege covers the substance of the communication. This privilege will extend to others who become aware of the confidential information at an attorney's direction. *Troisi, supra.* In the message, Mr. Kimmel only informs Mr. Siems that he is forwarding him a copy of Mr. McQueen's letter, which is addressed to both Mr. Kimmel and Mr. Siems. Mr. Kimmel adds to the message by giving a one-line summary of Mr. McQueen's legal advice as to how the relators should proceed. The attorney-client privilege, therefore, extends to protect the contents of this message.[17]

The final communication for this Court to consider, the *"LITIGATION REPORT"* submitted by Mr. McKay, presents a different problem than the letter written by Mr. McQueen. The first difficulty with Mr. McKay's report arises from the dispute of whether Mr. McKay was retained as an attorney or solely as an investigator. If he acted as an attorney and otherwise meets the requirements announced in Syllabus Point 2 of *Burton, supra,* then the privilege applies. However, if Mr. McKay acted as an investigator and not as an attorney, an inquiry must be made as to whether the report was made in anticipation of litigation.[18]

In our judgment, the report prepared by Mr. McKay could be exempted from discovery under the attorney-client privilege. Despite the fact there is nothing in the record that convinces us Mr. McKay was not acting as an attorney, the circuit court made no finding as to the actual status of Mr. McKay.[19] We are thus *dubitante* as to what

17. Although we conclude the letter dated November 25, 1992, the facsimile transmission, and the electric mail message, on their face, are protected by the attorney-client privilege, it is not a definitive ruling that the documents should not be disclosed. As previously indicated, the circuit court did not articulate sufficient findings of fact with regard to why the documents were ordered disclosed. Upon reconsideration, for example, the circuit court may find evidence that the attorney-client privilege was waived.

18. There are four significant differences between the work product exception and the attorney-client privilege:

(1) Material covered by the attorney-client privilege is not discoverable even if the opponent demonstrates that he or she has a special need for the material to prepare his or her case. Material that is covered only by the work product exception can be discovered upon a showing of substantial need, at least if it does not reveal the mental impressions of the party's attorney or other representative.

(2) The attorney-client privilege applies only to confidential communications between attorneys and their clients or their representatives. Much more is covered by the work product exception. For example, a statement to an attorney made by a witness who is not a client is covered; information gathered by a party or a party's agent so long as the information is gathered in anticipation of litigation even if no attorney had been retained at the time the information was gathered also is covered. The important factor is whether the information was gathered in "anticipation of litigation." Thus, an attorney need not be involved for the work product exception to take effect.

(3) As stated above, the work product exception applies only to information gathered in "anticipation of litigation." The attorney-client privilege covers confidential communications to an attorney when an individual seeks legal advice or services, whether or not litigation is expected.

(4) The attorney-client privilege can be waived only by a client. The work product exception can be waived by an attorney.

19. We recognize there is also the possibility that an employee's communication to an attorney may be privileged if the communication was necessary for the attorney to give his or her client adequate legal advice. Indeed, the recent trend is towards blending the attorney-client privilege and the work product exception. For example, in *Upjohn Co.,* the Supreme Court "relied upon work product precedent to justify its conclusions

facts the circuit court relied upon to support a rational finding that the *"LITIGATION REPORT"* was not covered by the attorney-client privilege. The report contains the kind of information one can label as uniquely that of an attorney. As far as we can tell, although Mr. McKay was not part of the legal department at the time the report was prepared, the report was drafted to assist Mr. McQueen. Again, the circuit court made no findings as to these important matters. Of course, the mere fact the report may have been transferred to the legal department at a later time does not alone make the report become an attorney's communication.

■ On the other hand, as we stated earlier, the claimant bears the burden of proving the attorney-client relationship and the privilege, even when proved, is to be applied strictly. We refuse to adopt a *per se* rule making ordinary investigative employees, who hold licenses to practice law, attorneys for purposes of the attorney-client privilege. To do so could pose an absolute bar to discovery of relevant and material evidentiary facts. In the insurance industry context, it would shield from discovery documents that otherwise would not be entitled to any protection if written by an employee who holds no law license but who performs the same investigation and duties. To enlarge the scope of protection to those not performing traditional attorney duties would be fundamentally incompatible with this State's broad discovery policies designed for the ultimate ascertainment of truth.[20] More than ever, we find these broad discovery policies essential to the fair disposition of both civil and criminal lawsuits. *See McDougal, supra.*

If the *"LITIGATION REPORT"* is reconsidered by the circuit court, the issues raised here and the questions asked must be resolved on the record. Only if the circuit court explicitly declares that the report is not barred from discovery under the attorney-client privilege should it move on to its discoverability under a work product analysis.

### D.

### *Work Product Doctrine*

The work product doctrine in West Virginia, which historically protects against disclosure of the fruits of an attorney's labor, is necessary to prevent one attorney from invading the files of another attorney. In addition to Rule 26(b)(3), this Court consistently has recognized that the work product exception may act as a bar to discovery requests. *See McDougal,* 193 W.Va. at 237 n. 9, 455 S.E.2d at 796 n. 9; *State ex rel. Chaparro v. Wilkes,* 190 W.Va. 395, 398, 438 S.E.2d 575, 578 (1993); *In re Markle,* 174 W.Va. 550, 556–57, 328 S.E.2d 157, 163 (1984). In relevant part, Rule 26(b)(3) states:

> "(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other rep-

---

as to the proper scope of the attorney client privilege." Note, *Attorney–Client and Work Product Protection in a Utilitarian World: An Argument for Recomparison,* 108 Harv.L.Rev. 1697, 1700 (1995). "The Court used *Hickman* 's work product rationale to explain its conclusions that the attorney-client privilege covers communications 'made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel'.... The Court emphasized the importance of the privilege to a lawyer's trial preparation." Note, *supra,* at 1700 n. 30. (Citations omitted). We are unable from the findings of the circuit court to determine whether this aspect of the attorney-client privilege is applicable.

**20.** *See State ex rel. Rusen v. Hill,* 193 W.Va. 133, 139, 454 S.E.2d 427, 433 (1994).

resentative of a party concerning the litigation."

We agree with the Fourth Circuit that the above work product protection should be analyzed in two contexts: *Fact* work product and *opinion* work product. In *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994), the court stated:

"Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.... Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney." (Citations omitted).

█ Where the work product exception is asserted, a circuit court must consider that the protection stemming from this privilege belongs to the professional, rather than the client, and that efforts to obtain disclosure of opinion work product should be evaluated with particular care. *See In re Markle*, 174 W.Va at 556–57, 328 S.E.2d at 164.

A close look at the circuit court's order indicates the circuit court may have found the report of Mr. McKay within the definition of work product as contemplated by Rule 26(b)(3), but the only parts of the report not subject to discovery were those considered as "mental impressions and opinions" of an attorney. If we are correct in our speculation, the circuit court upon reconsideration should make specific findings to this effect.

Finally, we must address the issue whether the work product exception evaporates when the litigation for which the document was prepared ends or extends to subsequent litigation.[21] The Supreme Court in *Hickman, supra,* and its progeny, however, does not delineate a temporal scope for the doctrine.

In the context of Rule 26(b) of the Federal Rules of Civil Procedure,[22] which was modeled upon *Hickman,*[23] the Supreme Court recognized that "the literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Federal Trade Comm'n v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387, 393 (1983). (Emphasis in original; citation omitted). Although the Supreme Court in *Grolier,* 462 U.S. at 26, 103 S.Ct. at 2214, 76 L.Ed.2d at 393, refused to base its decision "exclusively on any particular construction of Rule 26(b)(3)," *Grolier* provides a strong hint that the rule and *a fortiori Hickman,* as the genesis to the rule, apply to subsequent litigation.

In canvassing the different courts which have struggled with this issue, we observe an emerging majority, at least on the federal side, seems to find that the work product doctrine extends to subsequent litigation. Two circuits, the Third and the Fifth, have applied the work product doctrine to "closely related" subsequent litigation. *See In re Grand Jury Proceedings,* 604 F.2d 798, 803–04 (3rd Cir.1979); *In re Grand Jury Proceedings,* 43 F.3d 966, 971 (5th Cir.1994). The Fourth and Eighth Circuits have taken a broader view by finding the privilege applies to all subsequent litigation whether related or not. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 484 n. 15 (4th Cir.1973); *United States v. Pfizer Inc. (In re Murphy),* 560 F.2d 326, 335 (8th Cir.1977).

We find it unnecessary to choose between these two alternatives at this time because the documents sought to be discovered in this case satisfy both alternatives. The original litigation for which the documents were prepared, under any stretch of the imagination, could not be more closely related. Ac-

---

**21.** The issue as to the temporal scope of the work product doctrine only was slightly raised at oral argument; however, we deem it important enough to give the circuit court guidance should it be raised later.

**22.** Rule 26(b)(3) of the West Virginia Rules of Civil Procedure nearly is identical to its federal counterpart.

**23.** *See* Fed.R.Civ.P. 26(b)(3), advisory committee's notes to the 1970 Amendment.

cordingly, whichever view of the temporal scope of the work product doctrine one prefers, it is clear the documents in this case are within its scope.

### III.

### CONCLUSION

For the foregoing reasons, we find the Circuit Court of Kanawha County acted in excess of its authority in granting Mr. Lovell's motion for discovery of the four documents in dispute. Therefore, we grant the writ of prohibition.

Writ granted.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.