IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 22-0400

_____

**FILED**

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. ANTERO RESOURCES CORPORATION,
Petitioner,

v.

THE HONORABLE CHRISTOPHER MCCARTHY,
JUDGE OF THE CIRCUIT COURT OF HARRISON COUNTY,
SCOTT A. WINDOM, TRUSTEE OF THE CAROLYN E. FARR TRUST
AND ITS BENEFICIARIES, AND
EMPIRE OIL & GAS, INC., A WEST VIRGINIA CORPORATION,
Respondents.

_____

PETITION FOR A WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: November 1, 2022
Filed: November 17, 2022

Timothy M. Miller, Esq.
Mychal S. Schultz, Esq.
Katrina N. Bowers, Esq.
Babst, Calland, Clements &
    Zomnir, P.C.
Charleston, West Virginia
and
Joseph V. Schaeffer, Esq.
Babst, Calland, Clements &
    Zomnir, P.C.
Pittsburgh, Pennsylvania
Attorneys for Petitioner

David J. Romano, Esq.
Romano Law Office, LC
Clarksburg, West Virginia
Counsel for Respondents,
Scott A. Windom, Trustee and
Empire Oil & Gas, Inc.

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICES WOOTON and BUNN, deeming themselves disqualified, did not participate in the decision in this case.

JUDGES HAMMER and SIMS, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.    "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

2.    "When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. Pt. 3, *State ex rel. U. S. Fidelity & Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).

3.    "'In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.' Syllabus Point 2, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979)." Syl. Pt. 7, *State ex rel. U. S. Fidelity & Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).

4. "The burden of establishing the attorney-client privilege . . . always rests upon the person asserting it." Syl. Pt. 4, in part, *State ex rel. U. S. Fidelity & Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).

5. "To establish the application of the crime-fraud exception, a party must demonstrate an adequate factual basis exists to support a reasonable person's good faith belief that an *in camera* review of the privileged materials would produce evidence to render the exception applicable. In making this *prima facie* showing, the party must rely on nonprivileged evidence, unless the court has not previously made a preliminary determination on the matter of privilege, in which case the allegedly privileged materials may also be considered. Discretion as to whether to conduct an *in camera* review of the privileged materials rests with the court. If, however, the *prima facie* evidence is sufficient to establish the existence of a crime or fraud so as to render the exception operable, the court need not conduct an *in camera* review of the otherwise privileged materials before finding the exception to apply and requiring disclosure of the previously protected materials. The crime-fraud exception operates to compel disclosure of otherwise privileged materials only when the evidence establishes that the client intended to perpetrate a crime or fraud and that the confidential communications between the attorney and client were made in furtherance of such crime or fraud." Syl. Pt. 7, *State ex rel. Allstate Ins. Co. v. Madden,* 215 W. Va. 705, 601 S.E.2d 25 (2004).

ii

6.     "In order to admit in evidence confidential communications between attorney and client under the exception to the general rule that, if such communications were made in order to perpetrate a fraud on justice, they are not privileged, it must clearly appear that such communications were made by the client with that intent and purpose." Syl. Pt. 2, *Thomas v. Jones,* 105 W. Va. 46, 141 S.E. 434 (1928).

**HUTCHISON, Chief Justice:**

Petitioner, Antero Resources Corporation, seeks a writ of prohibition to prevent the respondent, the Honorable Christopher McCarthy, Judge of the Circuit Court of Harrison County, from enforcing an April 7, 2022, order granting a motion to compel filed by the plaintiffs below and respondents herein, Scott A. Windom, Trustee of the Carolyn E. Farr Trust and its Beneficiaries, and Empire Oil & Gas, Inc., (hereinafter "plaintiffs"). The order requires Kevin Ellis, an attorney employed by Antero, to appear at a deposition and respond to questions that Antero claims are subject to the attorney-client privilege and/or work product doctrine. Antero argues that the circuit court abused its discretion by making factual findings in its order that are contrary to the evidentiary record and erroneously applied the crime-fraud exception to the attorney-client privilege. Having considered the parties' briefs and oral arguments, the submitted appendices, and the pertinent authorities, we grant the writ for the reasons set forth below.

## I. Facts and Procedural Background

The Carolyn E. Farr Trust was created by its namesake on May 24, 1991, to provide funds for the general care, maintenance, and support of herself, and upon her death,[1] the same for her four children. The assets of the Trust include several natural gas

---

[1] Ms. Farr died in 1993.

mineral properties located primarily in Ritchie and Doddridge counties.[2] Ms. Farr designated Clarence E. Sigley, Sr., as the Trustee, and he served in that capacity until his death on September 22, 2019.

After Mr. Sigley's death, the underlying civil action commenced when the plaintiffs filed suit on June 22, 2020, against Mr. Sigley's estate, which was being administered by his wife, Barbara Wright Sigley. The complaint also named as defendants Ms. Sigley, individually; Amy R. Zannino, the Sigleys' daughter; and Antero. The complaint alleged that Mr. Sigley converted, misappropriated, and fraudulently diverted Trust assets thereby breaching his fiduciary duties and obligations as Trustee. Relevant to the issue before this Court, the complaint specifically alleged that Mr. Sigley improperly leased certain mineral properties belonging to the Trust to himself and then simultaneously assigned those leases to Antero, which allowed him to collect bonuses and royalty payments that he kept for himself and his family to the detriment of the Trust. The complaint further alleged that Antero facilitated or participated in the fraudulent transfers of the property and that Antero knew or should have known that Mr. Sigley's actions were a violation of his fiduciary duties.

The petition for a writ of prohibition currently before this Court stems from a discovery dispute that arose when the plaintiffs took the deposition of Kevin Ellis on

---

[2] Empire Oil & Gas, Inc., is a West Virginia company that is also an asset of the Farr Trust.

2

October 15, 2021. As noted above, Mr. Ellis is an attorney employed by Antero, and he held the title of "Manager, Administrative and Legal-WV" during the time period relevant to the plaintiffs' complaint.[3] The record indicates that Mr. Ellis secured the leases to the Farr Trust properties for Antero. During the deposition, counsel for Antero objected to many questions asked by counsel for the plaintiffs, instructing Mr. Ellis not to answer based upon the attorney-client privilege and/or work product doctrine. After Antero's counsel asserted multiple objections, the plaintiffs' attorney adjourned the deposition and then filed a motion to compel with the circuit court seeking a ruling requiring Mr. Ellis to answer the questions. The circuit court referred the matter to a discovery commissioner who held a hearing and ultimately recommended that the motion to compel be granted based upon a finding that the crime-fraud exception applies and precludes Antero from claiming the protections afforded by the attorney-client privilege and work product doctrine.

The circuit court adopted the findings of the discovery commissioner in its April 7, 2022, order and granted the plaintiffs' motion to compel. Antero then filed its petition for a writ of prohibition with this Court. By order entered on August 17, 2022, we issued a rule to show cause why the writ should not be granted and scheduled the matter for oral argument.

---

[3] According to Antero, Mr. Ellis's current title is "Regional Vice President-Appalachia."

3

## II. Standard for Issuance of Writ

In the context of discovery orders, this Court has held that clear legal error warrants the exercise of this Court's original jurisdiction through the issuance of a writ of prohibition. As syllabus point one of *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W. Va. 622, 425 S.E.2d 577 (1992), provides: "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." This Court has further held that "[w]hen a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. Pt. 3, *State ex rel. U. S. Fidelity & Guar. Co. v. Canady*, 194 W. Va. 431, 460 S.E.2d 677 (1995).[4] The reason for this holding is obvious.

---

[4] Rule 26 of the West Virginia Rules of Civil Procedure provides, in pertinent part:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

4

"[T]he attorney-client privilege and the work product exception would be lost forever if the offended party is forced to 'run the gauntlet' before having the opportunity to seek redress before this Court." *Canady*, 194 W. Va. at 437, 460 S.E.2d at 683. Accordingly, with this standard in mind, we consider the parties' arguments.

### III. Discussion

Antero argues that the findings the circuit court made in its April 7, 2022, order granting the plaintiffs' motion to compel are inadequate, contrary to the evidentiary record, and do not support the application of the crime-fraud exception to the attorney-client privilege. Specifically, Antero contends that the circuit court committed clear legal

---

* * * *

> (3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Emphasis added).

5

error by concluding that "Antero's participation in the fraudulent scheme can be inferred by its inspection of property records and its continued payment to [Mr. Sigley] as an individual without taking action to verify the propriety of the actions of [Mr. Sigley]." Antero asserts that this is clear error because an inference does not equate to the factual basis required for application of the crime fraud exception, and because the circuit court ignored the fact that the Trust Agreement expressly provided that Mr. Sigley as Trustee could sign documents and take title of Trust property in his own name. Antero also points out that the circuit court disregarded West Virginia Code § 44-5A-3(b) (2011) which provides that "the party dealing with the fiduciary[5] is not under a duty to follow the proceeds or other consideration received by a fiduciary from the sale or exchange [of any property]." (Footnote added). Finally, Antero contends that the plaintiffs presented no evidence that it communicated with Mr. Ellis with the "intent and purpose" to commit a fraud which is a necessary part of the prima facie showing required for invocation of the crime-fraud exception to the attorney-client privilege. Antero maintains that it was also clear legal error for the circuit court to apply the crime-fraud exception in the absence of such evidence.

Conversely, the plaintiffs argue that none of the information they are seeking is protected by the attorney-client privilege. They contend that Mr. Ellis was not acting in

---

[5] West Virginia Code § 44-5A-1 (1993) defines "fiduciary" to include "one or more trustees of a testamentary or inter vivos trust estate, whichever in a particular case is appropriate."

6

his capacity as attorney, but rather was fulfilling his duty as Antero's "landman" when he secured the leases for the Farr Trust mineral properties. As such, the plaintiffs maintain that counsel for Antero had no basis to assert the attorney-client privilege and instruct Mr. Ellis not to respond to the questions posed to him during his deposition. The plaintiffs further argue that if the attorney-client privilege was properly invoked by Antero, then the circuit court's order contains the findings necessary for application of the crime-fraud exception.

"The attorney-client privilege is a common law privilege that protects communications between a client and an attorney during consultations." *State ex rel. Doe v. Troisi*, 194 W. Va. 28, 35-36, 459 S.E.2d 139, 146-47 (1995). It "is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." *Canady*, 194 W.Va. at 438, 460 S.E.2d at 684. We have held that

> "[i]n order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential." Syllabus Point 2, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979).

*Id.* at 433-34, 460 S.E.2d at 679-80, syl. pt. 7. We have also held that "[t]he burden of establishing the attorney-client privilege . . . always rests upon the person asserting it." *Id.* at 434, 460 S.E.2d at 679, syl. pt. 4, in part.

7

The attorney-client privilege is not absolute; it is subject certain exceptions such as the crime-fraud exception, which the plaintiffs have asserted here.[6] As this Court observed in *State ex rel. Allstate Ins. Co. v. Madden,* 215 W. Va. 705, 717, 601 S.E.2d 25, 37 (2004), "[t]he crime-fraud exception has long been recognized as a means to overcome the privilege ordinarily afforded to communications between a client and his or her counsel when such communications have been made in furtherance of the commission of a crime or fraud." In other words, ""[i]t is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy" . . . between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime."" *Id., quoting United States v. Zolin*, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469, 485 (1989) (citations omitted). This Court has held that

> [t]o establish the application of the crime-fraud exception, a party must demonstrate an adequate factual basis exists to support a reasonable person's good faith belief that an *in camera* review of the privileged materials would produce evidence to render the exception applicable. In making this *prima facie* showing, the party must rely on nonprivileged evidence, unless the court has not previously made a preliminary determination on the matter of privilege, in which case the allegedly privileged materials may also be considered. Discretion as to whether to conduct an *in camera* review of the privileged materials rests with the court. If, however, the *prima facie* evidence is sufficient to establish the existence of a crime or fraud so as to render the exception operable, the court need not conduct an *in camera* review of the otherwise privileged materials before finding the exception to apply and requiring disclosure of the previously protected materials. The crime-fraud exception operates to compel disclosure of otherwise

---

[6] The attorney-client privilege may also be waived. *Canady,* 194 W.Va. at 442, 460 S.E2d at 688. However, there has been no assertion of waiver in this matter.

8

> privileged materials only when the evidence establishes that the client intended to perpetrate a crime or fraud and that the confidential communications between the attorney and client were made in furtherance of such crime or fraud.

*Madden,* 215 W. Va. at 709, 601 S.E.2d at 29, syl. pt. 7.

Having carefully reviewed the April 7, 2022, discovery ruling, we find that the circuit court abused its discretion and committed clear legal error by declaring the crime-fraud exception applicable without first determining whether the attorney-client privilege could be invoked in response the questions posed to Mr. Ellis by the plaintiffs' counsel. The circuit court's order indicates that the court simply "assumed that some of the . . . questions posed at the deposition could, at least arguably, be protected from disclosure by the attorney-client privilege." The order further indicates, however, that it was undisputed that Mr. Ellis had duties as "Manager, Administrative and Legal-WV" that were both legal and non-legal in nature and that "neither party identified any clear delineation." In addition, the plaintiffs have argued from the outset that the information they seek relates solely to Mr. Ellis's non-legal duties, and therefore, the attorney-client privilege does not apply.

This Court has made clear that "even when proved, [the attorney-client privilege] is to be applied strictly." *Canady,* 194 W. Va. at 444, 460 S.E.2d at 690. As we have explained, because "[t]he attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are

9

antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." *Id.* at 438, 460 S.E.2d at 684. Therefore, "the claimant must show certain threshold requirements in order to avail himself or herself of the privilege or exception including a showing that the communication originated in confidence, that it would not be disclosed, that *it was made by an attorney acting in his or her legal capacity for the purpose of advising a client*, and that it remained confidential." *Id.,* (emphasis added).

The fact that Mr. Ellis holds a law license and was in-house counsel for Antero does not mean that the attorney-client privilege extends to all of his communications. Indeed, in *Canady*, this Court expressly "refuse[d] to adopt a *per se* rule making ordinary investigative employees who hold licenses to practice law, attorneys for purposes of the attorney-client privilege[,]" explaining that

> to do so could pose an absolute bar to discovery of relevant and material evidentiary facts. In the insurance industry context, it would shield from discovery documents that otherwise would not be entitled to any protection if written by an employee who holds no law license but who performs the same investigation and duties. To enlarge the scope of protection to those not performing traditional attorney duties would be fundamentally incompatible with this State's broad discovery policies designed for the ultimate ascertainment of truth. More than ever, we find these broad discovery policies essential to the fair disposition of both civil and criminal lawsuits.

*Id.* at 444, 460 S.E.2d at 690. Because Mr. Ellis was performing a variety of duties for Antero at the time the leases for the Farr Trust properties were obtained, we find that the

10

circuit court's failure to conduct an analysis of the questions posed during his deposition to determine the scope and applicability of the attorney-client privilege was clear error that warrants the granting of the writ of prohibition. Given these particular facts and circumstances, determining the applicability of the attorney-client privilege to the information sought by the plaintiffs during Mr. Ellis's deposition was a necessary first step in the analysis of whether to grant the plaintiffs' motion to compel. The circuit court's failure to make that determination cannot be overlooked and requires us to grant Antero the requested relief.

If the parties seek to revisit this matter below, the circuit court must conduct a new hearing and first determine whether the attorney-client privilege applies to the communications Antero seeks to shield from discovery. In *Madden,* we outlined the general procedure to be followed when attorneys who are being deposed assert the attorney-client privilege*,* instructing that

> if the party seeking testimony for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an *in camera* proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

*Id.* at 710, 601 S.E.2d at 30, syl. pt. 11, in part. Should the circuit court find any of the communications between Mr. Ellis and Antero protected by the attorney-client privilege, then the circuit court can proceed to determine whether the plaintiffs have demonstrated an adequate factual basis to render the crime-fraud exception operable. Critically, "the

11

dispositive question is whether the attorney-client communications are part of the client's effort to commit a crime or perpetuate a fraud." *Id.* at 717, 601 S.E.2d at 37 (additional quotations and citation omitted). In other words,

> in order to admit in evidence confidential communications between attorney and client under the exception to the general rule that, if such communications were made in order to perpetrate a fraud on justice, they are not privileged, it must clearly appear that such communications were made by the client with that intent and purpose.

Syl. Pt. 2, *Thomas v. Jones,* 105 W. Va. 46, 141 S.E. 434 (1928). In the absence of such evidence, there would not be an adequate factual basis to render the crime-fraud exception operable. *See* syl. pt. 7, *Madden, supra.*

## IV. Conclusion

For the foregoing reasons, we grant the requested writ of prohibition.

Writ granted.

12