658 S.E.2d 728

**STATE ex rel. NATIONWIDE MUTUAL INSURANCE COMPANY and Stephen D. Clegg, Petitioners,**

v.

**The Honorable Tod KAUFMAN, Judge of the Circuit Court of Kanawha County, West Virginia; Donald E. Smith II and Sherri Smith, Respondents.**

No. 33652.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2008.

Decided Jan. 25, 2008.

 

Michelle Roman Fox, Martin & Seibert, Charleston, for Petitioner Nationwide Mutual.

Asad U. Khan, The Law Office of W. Stephen Flesher, Charleston, for Petitioner Clegg.

John H. Tinney, Jr., John K. Cecil, The Tinney Law Firm, Charleston, for Respondents.

DAVIS, Justice:

This matter was filed under the original jurisdiction of this Court by Nationwide Mutual Insurance Company and Stephen D. Clegg, petitioners/defendants below, seeking a writ of prohibition to prevent enforcement of an order entered by the Honorable Tod Kaufman, Judge of the Circuit Court of Kanawha County.[1] In that order, the circuit court (1) required that Mr. Clegg produce specific discovery request documents to the court, along with a privilege log, for an in camera review; (2) denied Nationwide's motion for a protective order and stay of discovery; and (3) took under advisement a motion by Nationwide to bifurcate the case against it from that of the case against Mr. Clegg. After a careful review of the limited record and listening to the arguments of the parties, we deny the writ.

1. Nationwide and Mr. Clegg filed a joint petition

## I.

### FACTUAL AND PROCEDURAL HISTORY

On May 31, 2005, Donald E. Smith, II, respondent/plaintiff below, was driving a motorcycle westbound on Greenwood Road in South Charleston, West Virginia. On the same day, Mr. Clegg was driving a sport utility vehicle eastbound on the same road. For reasons that have yet to be determined, the vehicles driven by Mr. Smith and Mr. Clegg collided. Mr. Smith was injured in the accident and taken to a hospital to be treated.

Mr. Smith eventually filed a claim with Mr. Clegg's insurer, Nationwide. It appears that Nationwide conducted an investigation that included interviewing Mr. Clegg and Mr. Smith. Subsequently, in January of 2006, Nationwide entered into a settlement with Mr. Smith regarding only property damage claim. As part of the agreement, Mr. Smith turned over ownership of the motorcycle to Nationwide, along with the helmet he wore at the time of the accident. Nationwide thereafter auctioned the motorcycle.

In August of 2006, Mr. Smith and his wife, Sherri L. Smith, filed the instant action against Mr. Clegg. In September of 2006, the Smiths served Mr. Clegg with a set of interrogatories and request for production of documents. Pertinent to this proceeding, Mr. Clegg objected to producing documents sought by the Smiths' Request No. 16 which stated:

> Please produce a copy of any and all communications between Defendant and Defendant's insurance company(ies) and/or any insurance company(ies) providing coverage for the motor vehicle Defendant was driving during the accident, which address, in any manner, the incident[,] the possible causes of the incident and/or the issues made the subject of Plaintiffs' Complaint including, but not limited to, letters, electronic mail, faxes, notes, memoranda, reports, phone logs, diaries, journals and transcripts.

Mr. Clegg objected to producing the documents sought by Request No. 16 based upon

for the writ.

the attorney-client privilege and the work product doctrine.

In April of 2007, the Smiths filed a motion seeking to compel Mr. Clegg to produce the documents sought by Request No. 16.[2] After a hearing on the motion, the circuit court issued an order compelling Mr. Clegg to produce the documents sought by Request No. 16, and to provide a privilege log for items deemed protected by the attorney-client privilege and the work product doctrine.

As a result of information learned during the early stages of discovery, the Smiths were allowed to file an amended complaint in June of 2007, to assert a cause of action against Nationwide. The complaint against Nationwide asserted claims for waiver, estoppel, and spoliation.

Further, in June of 2007, the Smiths filed a motion to hold Mr. Clegg in contempt for failing to comply with the circuit court's discovery order regarding Request No. 16. After a hearing on the motion for contempt, the circuit court issued an order in July of 2007, that once again ordered Mr. Clegg produce the documents sought by Request No. 16, and to provide a privilege log for items deemed protected by the attorney-client privilege and the work product doctrine.

On August 2, 2007, Mr. Clegg filed a motion to vacate the circuit court's last order compelling discovery under Request No. 16, and seeking an order staying discovery under Request No. 16. On August 7, 2007, Nationwide filed a motion seeking a protective order and stay of discovery against it and Mr. Clegg, and bifurcation of all claims against it from Mr. Clegg's case. On August 8, 2007, the Smiths again filed a motion for contempt against Mr. Clegg for failing to comply with the circuit court's order compelling discovery under Request No. 16.

The circuit court conducted a hearing on all three motions filed by the parties. On August 30, 2007, the circuit court issued an order which (1) required Mr. Clegg to produce to the court the documents sought under Request No. 16, along with a privilege log, for an in camera review;[3] (2) denied Nationwide's motion for a protective order and stay of discovery; and (3) took under advisement Nationwide's motion to bifurcate the case against it from that of the case against Mr. Clegg.

On August 31, 2007, Nationwide and Mr. Clegg filed the instant matter with this Court. On the same date, Nationwide wrote a letter to the circuit court requesting the court to issue an order setting out findings of fact and conclusions of law pursuant to Syllabus point 6 of *State ex rel. Allstate Insurance v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998) ("A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appeal able interlocutory orders."). On September 12, 2007, the circuit court issued an order, incorporating its previous order of August 30, which set out findings of fact and conclusions of law.[4]

## II.

### STANDARD OF REVIEW

In this proceeding, Nationwide and Mr. Clegg seek a writ of prohibition to pre-

---

**2.** Other matters were also raised that are not relevant to the issues to be decided in this proceeding.

**3.** The order also expressly denied the relief sought by Mr. Clegg.

**4.** Insofar as the petition in this case was filed before the circuit court issued its September 12th order, the petition was based upon the order of August 30. However, the Smiths have filed a copy of the September 12th order with their response. The issues in the case will be addressed under the September 12th order that was requested by Nationwide and required by *Gaughan*.

vent enforcement of the circuit court's discovery order. This Court has explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977). Further, we have held that,

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Finally, this Court has held that

> A circuit court's ruling on discovery requests is reviewed for an abuse of discretion standard; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. The discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard.

Syl. pt. 5, *State ex rel. Med. Assurance of W Va., Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d

80 (2003). With these standards to guide us, we now determine the propriety of granting a writ of prohibition in the instant case.

## III.

## DISCUSSION

We are called upon to address three issues arising from the circuit court's September 12th order: (1) requiring Mr. Clegg to produce documents sought under Request No. 16; (2) denial of Nationwide's motion for a protective order and stay of discovery; and (3) taking under advisement Nationwide's motion to bifurcate. We will address each separately below.

### A. Requiring Mr. Clegg to Produce Documents Sought under Request No. 16

The first issue we address is the assertion that this Court should prevent enforcement of that part of the circuit court's order requiring Mr. Clegg to produce documents sought under Request No. 16 because the information sought is privileged. Although this issue is mentioned in the joint petition filed by Mr. Clegg and Nationwide, there is scant discussion of the matter in the petition. In fact, the petition is almost entirely devoted to Nationwide's objections to the circuit court's discovery and bifurcation ruling against it. As a general rule, this Court has held that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996). *See also Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues ... merely mentioned in passing are deemed waived." (citation omitted)). Insofar as the issue concerning Request No. 16 is straightforward and has been adequately briefed by the Smiths, we will dispose of the issue on its merits.

■ Mr. Clegg has asserted that the materials sought under Request No. 16 are protected from discovery by the attorney-client privilege and/or the work product doctrine. This assertion may very well be true.

However, at this stage of the litigation the truth or falsity of the assertion is known only to Mr. Clegg. Further, Mr. Clegg takes the position that a party can prevent discovery by simply stating that material sought is privileged. If we allowed such a position to be the law, no party would ever obtain information during discovery because parties would invoke an unreviewable claim of privilege. Obviously this is not, and has never been, the law. *See Pensacola Beach Cmty. United Church, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, Pennsylvania, No. 3:06cv236/RV/EMT, 2007 WL 737499, *2 (N.D.Fla. Mar. 7, 2007) ("General or blanket claims of privilege are insufficient for a party to withhold materials under a claim of privilege.").

Rule 26(b)(1) of the West Virginia Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, ... including the existence, description, nature, custody, condition and location of any books, documents or other tangible things[.]" We noted in *State ex rel. U.S. Fidelity and Guaranty Co. v. Canady*, 194 W.Va. 431, 441, 460 S.E.2d 677, 687 (1995), that "[i]n clear language, Rule 26 provides that privileged matters, although relevant, are not discoverable." "When a party asserts that a communication is privileged the trial court should examine the requested materials in an in camera hearing." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 26(b)(1), p. 697 (2d ed.2006) (citing *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 727–28, 421 S.E.2d 264, 268–69 (1992) ("[T]he circuit court should examine the requested materials in an *in camera* hearing.")). Further, in the context of a bad faith action against an insurer, we outlined the general procedure for discovery of material alleged to be privileged in *State ex rel. Westfield Insurance Co. v. Madden*, 216 W.Va. 16, 602 S.E.2d 459 (2004), as follows:

In an action for bad faith against an insurer, the general procedure involved with discovery of documents contained in an insurer's litigation or claim file is as follows: (1) The party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure; (2) If the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) The privilege log should be provided to the requesting party and the trial court; and (4) If the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

Syl. pt. 2, *Westfield, id.*

A critical aspect of the discovery procedure outlined in *Westfield* is the requirement that a privilege log be produced when a party seeks to shield documents from disclosure. "Most tribunals require the party asserting the privilege to provide the party seeking discovery with a list or log that describes the document without disclosing the allegedly privileged communications it contains." *PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999). The importance of a privilege log has been articulated as follows:

The purpose of preparing the privilege log is to assist the court and the parties in performing the careful analysis that a privilege or immunities evaluation demands. An invocation of a claim of privilege without producing an accompanying privilege log can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court. In addition, the very act of preparing a privilege log has a salutary effect on the discovery process by requiring the attorney claiming a privilege to actually think about the merits of assertion before it is made, and to decide whether such a claim is truly

appropriate. Moreover, the requirement of a privilege log is intended to underscore the gravity, if not the solemnity, of an assertion that otherwise presumptively discoverable documents are exempt from discovery. The requirement that detail be provided operates to discourage pro forma, half-baked, dilatory, and even jocular assertions of privilege.

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D.Conn.2007).[5]

■ Although the discovery procedure outlined in *Westfield* is narrowly confined to the context of a bad faith action against an insurer, we believe that this discovery procedure should have a general application to discovery of privileged communication in any context. Therefore, we now hold that the general procedure involved with discovery of allegedly privileged documents is as follows: (1) the party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure;[6] (2) if the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) the privilege log should be provided to the requesting party and the trial court; and (4) if the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

■ In the instant case, the circuit court's order does not require Mr. Clegg to provide the Smiths with privileged information. The order is quite clear in stating: "[T]he Court orders all documents responsive to Request No. 16 ... and the 'claims file' produced to the Court for an in-camera review[.]" The circuit court's order further stated that: "If applicable, Defendant Clegg shall produce to the Court and all parties of record a privilege log for those documents responsive to Request No. 16 and contained in the 'claims file' to which Defendant Clegg contends a privilege applies."

We need not prolong our discussion. The circuit court followed the proper procedure and did not abuse its discretion in ordering Mr. Clegg to tender to the court the information sought under Request No. 16, and to provide a privilege log for information alleged to be protected from disclosure. *See Feathers v. West Virginia Bd. of Med.*, 211 W.Va. 96, 105, 562 S.E.2d 488, 497 (2001) ("[W]here a party asserts a privilege, a log of the privileged material should be provided to the [requesting party], and the materials provided to a court for in camera inspection.").

### B. *Nationwide's Request for a Protective Order and Stay of Discovery*

■ Nationwide filed a motion seeking a protective order and stay of discovery against it until the action against Mr. Clegg had concluded.[7] The trial court denied the

---

**5.** Under Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure (there is no equivalent provision under our state rules), it is expressly required that a privilege log be produced whenever a party seeks to withhold documents under a claim of privilege. Federal Rule 26(b)(5)(A) provides:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**6.** West Virginia Rule 34(b) provides in relevant part that:

The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party. *The request shall set forth, either by individual item or by category, the items to be inspected, and describe each with reasonable particularity.* The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts.

(Emphasis added.)

**7.** Nationwide's motion also sought a protective order and stay of discovery against Mr. Clegg regarding Request No. 16. Assuming, for the sake of argument, that Nationwide had standing to raise this issue in the circuit court, the matter is moot because we have determined that the

motion. As a general matter, "Rule 26(c)(2) permits a trial court to issue a protective order requiring that discovery occur only on specified terms and conditions, including a designation of the time or place.... Rule 26(c)(2) may be used to stay discovery pending the outcome of a dispositive motion or other matter." Cleckley, et al., *Litigation Handbook*, § 26(c)(2), p. 758. Nationwide contends that under this Court's decision in *State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), it was mandatory for the circuit court to issue a protective order staying discovery.

In *Madden*, the plaintiff sued the defendant restaurant after being injured in a fall on the defendant's premises. The plaintiff also sued the restaurant's insurer for a statutory cause of action for bad faith settlement of the claim. Prior to trial, the matter was brought to this Court on a writ of prohibition by the defendants. One of the issues raised involved an order by the trial court that permitted discovery to proceed against the insurer while the case against the insured restaurant was being litigated. The insurer argued that discovery should be stayed pending resolution of the claim against its insured. We agreed with the insurer and held in Syllabus point 2 of the opinion that, in a third-party bad faith case, "any discovery or proceedings against the insurer [must be] stayed pending resolution of the underlying claim between the plaintiff and the insured[.]" *Id.*, 192 W.Va. 155, 451 S.E.2d 721.

The Smiths contend that the ruling in *Madden* is not controlling because their claim against Nationwide is not a statutory cause of action for bad faith settlement.[8] Further, the Smiths argue that the discovery principles outlined by this Court in *Light v. Allstate Insurance Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998), should govern their case against Nationwide.

In *Light*, the plaintiffs sued their insurer for breach of contract for failing to provide them with uninsured motorist benefits stemming from an automobile accident. The

plaintiffs also brought a bad faith claim against the insurer. The case was prosecuted in federal court. The federal district judge submitted the case to this Court on several certified questions. One of the questions we were asked to answer involved whether or not *Madden's* mandatory stay of discovery in third-party bad faith cases applied to first-party bad faith cases. We held that a stay was not mandatory:

> Trial courts have discretion in determining whether to stay discovery in a first-party bad faith claim against an insurer that has been bifurcated and stayed. Factors trial courts should consider in determining whether to stay discovery when bifurcation has been ordered in a bad faith action include: (1) the number of parties in the case, (2) the complexity of the underlying case against the insurer, (3) whether undue prejudice would result to the insured if discovery is stayed, (4) whether a single jury will ultimately hear both bifurcated cases, (5) whether partial discovery is feasible on the bad faith claim and (6) the burden placed on the trial court by imposing a stay on discovery. The party seeking to stay discovery on the bad faith claim has the burden of proof on the issue.

Syl. pt. 3, *Light, id.* In the instant proceeding, the circuit court expressly relied upon *Light* for guidance in determining whether to stay discovery.

Although the instant proceeding does not present a *Madden* or *Light* statutory bad faith cause of action, we believe the principles established in *Light* provide the better guidance for trial courts in deciding whether or not to stay discovery against an insurer in litigation involving both the insurer and insured as defendants. Therefore, we hold that factors trial courts may consider in determining whether to stay discovery against an insurer in a non-bad faith cause of action involving the insured and insurer as defendants include: (1) the number of parties in the case; (2) the complexity of the case; (3) whether undue prejudice would result to

circuit court properly ordered Mr. Clegg to produce documents sought under Request No. 16.

8. All the parties agree that pursuant to W. Va. Code § 33-11-4a (2005) (Repl.Vol.2006), the Legislature abolished a third-party bad faith cause of action against insurers.

the plaintiff if discovery is stayed; (4) whether a single jury will ultimately hear both cases; (5) whether partial discovery is feasible on the claim against the insurer, and (6) the burden placed on the trial court by imposing a stay on discovery. The party seeking to stay discovery has the burden of proof on the issue.

In the instant proceeding, the trial court found that the case involved a limited number of parties, the issues were not complex, the claims brought against Nationwide could lead to resolution of the entire case, and that staying discovery would result in a burden and unnecessary delay. These findings adequately support the trial judge's decision to allow discovery against Nationwide. Therefore we will not disturb the trial court's ruling on this issue.

### C. Nationwide's Request to Bifurcate

■ The final issue presented by Nationwide involves the trial court's resolution of its motion to bifurcate the claims against it. Nationwide relies on *Madden* for the proposition that bifurcation is mandatory when a claim is brought against an insured and his/her insurer. *See Light,* 203 W.Va. at 32, 506 S.E.2d at 69 ("Implicit in our holding in *Madden* was that bifurcation and stay of a third-party bad faith claim against an insurer are mandatory."). While it is true that a *Madden* fact pattern mandates bifurcation, in *Light* we held that "in a first-party bad faith action against an insurer, bifurcation and stay of the bad faith claim from the underly-

ing action are not mandatory." *Light,* 203 W.Va. at 35, 506 S.E.2d at 72. We decline to resolve at this time whether *Madden's* mandatory bifurcation, versus the discretionary bifurcation recognized in *Light,* applies to the fact pattern presented in this case. We do so because the circuit court has not ruled on the merits of the issue.[9]

The circuit court's order stated that "Defendant Nationwide's Motion to Bifurcate all claims asserted directly against Nationwide is taken under advisement and will be ruled upon at a later date." It would be premature on our part to prohibit the circuit court from doing that which it has yet to rule upon. *See State ex rel. Allstate Ins. Co. v. Gaughan,* 220 W.Va. 113, 122, 640 S.E.2d 176, 185 (2006) (declining to address issues that were not ruled upon by trial court); *State ex rel. Mobil Corp. v. Gaughan,* 211 W.Va. 106, 114, 563 S.E.2d 419, 427 (2002) (same).

### IV.

### CONCLUSION

We deny the requested writ of prohibition.

Writ Denied.

---

9. Under West Virginia Rule of Civil Procedure 42(c), "a trial court has discretion to bifurcate claims in furtherance of convenience, economy, or to prevent prejudice." Cleckley, et al., *Litigation Handbook,* § 42(c), p. 1071.