# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2015 Term**

**FILED**

**June 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

___

**No. 15-0094**

___

**STATE OF WEST VIRGINIA EX REL. HCR MANORCARE, LLC;
HCR MANORCARE, INC.; MC OPERATIONS INVESTMENTS, INC.;
HCRMC OPERATIONS, LLC; HCR MANORCARE OPERATIONS II, LLC;
HCR MANORCARE HEARTLAND, LLC; MANORCARE, INC;
HCR HEALTHCARE, LLC; HCR MANOR CARE SERVICES, INC.;
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, LLC;
HEARTLAND EMPLOYMENT SERVICES, LLC; JOSEPH DONCHATZ;
JOHN DOES 1 THROUGH 10; and UNIDENTIFIED ENTITIES 1
THROUGH 10 (AS TO HEARTLAND OF CHARLESTON),**
Petitioners

**v.**

**THE HONORABLE JAMES C. STUCKY, JUDGE OF THE
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA;**
and **TOM HANNA, individually, and on behalf of the
Estate and wrongful death beneficiaries of Sharon Hanna,**
Respondents

___

## ORIGINAL PROCEEDING IN PROHIBITION

## WRIT GRANTED AS MOULDED

___

**Submitted: April 22, 2015**
**Filed: June 9, 2015**

Robert M. Anspach, Esq.  
David E. Rich, Esq.  
William E. Murray, Esq.  
J. Jarrod Jordan, Esq.  
John A. Hess, Esq.  
R. Tyler Brewer, Esq.  
Anspach Meeks Ellenberger LLP  
Huntington, West Virginia  
Counsel for the Petitioners

James B. McHugh, Esq.  
Michael J. Fuller, Jr., Esq.  
Kendra R. Fokakis, Esq.  
A. Lance Reins, Esq.  
Amy J. Quezon, Esq.  
McHugh Fuller Law Group, PLLC  
Hattiesburg, Mississippi  
Counsel for Respondent Hanna

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE DAVIS dissents, in part, and concurs, in part, and reserves the right to file a separate Opinion.**

**SYLLABUS BY THE COURT**

1.  "The determination of which materials are privileged under *W.Va. Code*, 30-3C-1 [1975], *et seq*. is essentially a factual question and the party asserting the privilege has the burden of demonstrating that the privilege applies."  Syl. pt. 2, *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992).

2.  *"W.Va. Code*, 30-3C-3 [1980] provides that '[t]he proceedings and records of a review organization shall be confidential  .  .  .  Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such [a review] organization  .  .  .  .'  The language of the statute grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is 'otherwise available from original sources.'"  Syl. pt. 3, *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992).

3.  "Unless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous."  Syl. pt. 6, *State ex rel. U.S. Fidelity and Guaranty Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995).

4.  "The general procedure involved with discovery of allegedly privileged documents is as follows: (1) the party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure; (2) if the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) the privilege log should be provided to the requesting party and the trial court; and (4) if the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery."  Syl. pt. 2, *State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, 222 W.Va. 37, 658 S.E.2d 728 (2008).

**Justice Ketchum**:

This is an original proceeding in prohibition filed by petitioners HCR ManorCare, LLC, *et al.*, a group of corporate entities and individuals engaged in the operation of nursing homes and assisted living facilities throughout the United States. HCR ManorCare, LLC, *et al.* (collectively "ManorCare") are defendants in an action filed in the Circuit Court of Kanawha County by respondent Tom Hanna ("Hanna"), individually, and on behalf of the Estate and wrongful death distributees of Sharon Hanna (the "decedent"). Hanna alleges that the decedent died as a result of substandard care she received at Heartland of Charleston, a ManorCare nursing home located in Charleston, West Virginia.

ManorCare's petition for a writ of prohibition raises two discovery issues. The first issue concerns ManorCare's challenge to circuit court orders directing ManorCare to produce certain nurse consultant reports known as Center Visit Summaries. ManorCare contends that the Summaries are excluded from discovery under this State's statutory peer review privilege. The second issue concerns ManorCare's challenge to the circuit court's order directing ManorCare to produce certain documents known as board of director Briefing Packets. ManorCare contends that the Briefing Packets are excluded from discovery pursuant to the attorney-client privilege. Emphasizing that the circuit court did not conduct an *in camera* proceeding as to either discovery issue, ManorCare asks for relief in prohibition to prevent

1

the enforcement of the orders requiring production of the Center Visit Summaries and the Briefing Packets.

Although this Court concludes that ManorCare's requested relief concerning the Center Visit Summaries is without merit, we are of the opinion that the circuit court exceeded its jurisdiction in ordering production of the board of director Briefing Packets. The circuit court should have conducted an *in camera* proceeding to make an independent determination as to whether the Briefing Packets are excluded from discovery pursuant to the attorney-client privilege. Accordingly, ManorCare's requested relief in prohibition is granted, as moulded.

**I.**
**The Underlying Action**

The decedent, Sharon Hanna, was an intermittent resident of Heartland of Charleston from June 2011 until her death on September 23, 2011. In June 2013, Hanna, the decedent's son, instituted an action in the circuit court against ManorCare. Also named as a defendant was Joseph Donchatz, an administrator of Heartland of Charleston. An amended complaint was later filed in February 2014. Demanding compensatory and punitive damages, Hanna alleged that the decedent received substandard care while at Heartland and that among the

consequences to the decedent were falls, fractures, pneumonia and death.[1]

## A.
### Discovery Requests Concerning the Center Visit Summaries

Soon after the action was filed, Hanna served a first request for production of documents pursuant to Rule 34 of the *West Virginia Rules of Civil Procedure*. The request specified that "a statement of the specific basis on which privilege is claimed" was to be furnished by ManorCare for any document withheld under a claim of privilege or other exemption from discovery. ManorCare employed nurse consultants to do periodic evaluations of ManorCare facilities. In request numbers 16 and 26, Hanna sought production of nurse consultant reports ("Center Visit Summaries"), concerning the care and treatment of patients at Heartland of Charleston during the decedent's residency.[2]

---

[1] The amended complaint contained twelve counts as follows: (1) negligence, non-lethal injuries, (2) negligence, lethal injuries, (3) negligence of Heartland of Charleston administrators, (4) violations of law, non-lethal injuries, (5) violations of law, lethal injuries, (6) medical malpractice, non-lethal injuries, (7) medical malpractice, lethal injuries, (8) malice and/or gross negligence, (9) fraud, (10) breach of fiduciary duty, (11) premises liability and (12) violation of the *West Virginia Consumer Credit and Protection Act*.

[2] Requests 16 and 26 in Hanna's first request for production of documents were as follows:

> *Request for Production No. 16*: All reports, correspondence or other writings generated by or on behalf of any management company of, or consultant to, the facility concerning the care and treatment of residents during Sharon Hanna's residency.

3

Approximately two months later, in September 2013, ManorCare filed a response to request numbers 16 and 26 in which ManorCare asserted that it was unaware of the existence of, and did not have in its possession, sufficient information to formulate a reply. Moreover, ManorCare asserted that, even if the documents existed, *i.e.*, the Center Visit Summaries, the documents would be excluded from discovery pursuant to the peer review privilege described in *W.Va. Code*, 30-3C-1 [2004], *et seq*. ManorCare did not allege in its response that it had a designated peer review organization in place which would have reviewed the purported Summaries.

In February 2014, Hanna filed a Rule 37 motion to compel with regard to request numbers 16 and 26. Hanna asserted that the requests sought information outside the scope of the peer review privilege. Following a hearing, the circuit court entered an order on May

*Request for Production No. 26*: All documentation and reports from any consultant or management personnel at the facility at anytime during Sharon Hanna's residency. This request includes, but is not limited to any ongoing or periodic report, study, evaluation or assessment generated by the following consultants or employees of the facility:

a. R.N. Nurse Consultant;
b. Pharmaceutical Consultant;
c. Registered Dietician Consultant;
d. Quality Assurance Staff;
e. Medical Records Consultant; or
f. Any other health or medical consultant brought in or employed to evaluate or study the adequacy of care. Further this request includes any minutes from all meetings conducted by any of the above consultants or employees during the aforementioned time frame.

4

12, 2014, directing ManorCare to produce the documents requested. The order provided that the identity of residents at Heartland of Charleston, other than the decedent, be redacted from the material. The order stated further:

> If Defendants [ManorCare, *etc*.] are going to attempt to assert a quality assurance privilege to any documents responsive to this ordered production, they must file a privilege log identifying when said document was created, who created said document by name and position in the facility, the title of the document, and a general description of the type of information contained in the document for the Court's review.[3]

Soon after, Hanna filed a motion to compel compliance with the May 12, 2014, order. In a separate letter to ManorCare, Hanna indicated that ManorCare was on notice of the Center Visit Summaries because ManorCare had been present during the discovery process in an unrelated action where information about the Summaries was obtained.

The unrelated action was styled *McClanahan v. HCR ManorCare, LLC, et al.*, no. 13-C-1705 (Kanawha County). ManorCare asserts that it was not aware of the Center Visit Summaries until the deposition, in *McClanahan*, of Debra Blair on June 11, 2014. Blair was

---

[3] The order also directed ManorCare to complete the production of documents within thirty days "from the date of the hearing of this matter." Since the hearing on Hanna's motion to compel was conducted on March 26, 2014, and the order was not entered until May 12, 2014, it was not possible for ManorCare to comply with the time constraints imposed by the circuit court. Hanna asserts, however, that entry of the May 12, 2014, ruling was delayed because ManorCare failed to respond to the proposed order sent to ManorCare by Hanna.

a nurse consultant who testified that she made reports after visiting ManorCare facilities in West Virginia. ManorCare states that the reports were made by nurse consultants, such as Blair, exclusively for ManorCare's Quality Assurance and Performance Improvement Program.

According to ManorCare, the Summaries in the current matter were only given to individuals permitted to be part of Heartland of Charleston's quality assurance, or peer review, committee as defined by its Quality Assurance and Performance Improvement Program. Thus, in August 2014, ManorCare filed a privilege log in the circuit court concerning the Center Visit Summaries pertaining to the decedent's residency at Heartland. ManorCare again asserted that the Summaries were protected from discovery pursuant to the statutory peer review privilege.

On September 4, 2014, the circuit court conducted a hearing on Hanna's motion to compel compliance with the May 12, 2014, order. Counsel for ManorCare argued that, in view of the filing of the privilege log, the next step would be for the circuit court to grant ManorCare an extension of time to demonstrate, by affidavit or otherwise, that ManorCare had a quality assurance committee. As stated by Hanna, however, ManorCare had been arguing peer review privilege since its original discovery response in September 2013, and yet, a year later at the September 4, 2014, hearing, ManorCare was "not prepared to establish

6

the quality assurance privilege they claimed."

On November 7, 2014, the circuit court granted Hanna's motion to compel compliance with the May 12, 2014, order and directed ManorCare to produce the Center Visit Summaries identified in the privilege log. The November 7, 2014, order stated that ManorCare "failed to put forth any evidence that a quality assurance committee existed or that the documents at issue were submitted to any such quality assurance committee."[4]

ManorCare filed a motion to alter or amend the November 7, 2014, order. ManorCare alleged that the circuit court committed error by failing to conduct an *in camera* proceeding to determine the status of each document claimed to be privileged. The circuit court, however, entered an order on February 2, 2015, denying the motion. The order stated that

> the evidence before this Court at the September 4, 2014 hearing was that during Sharon Hanna's residency at Heartland of Charleston there were Center Visit Summaries conducted by nurses that were not part of the quality assurance committee. Additionally, these nurses not only provided the Center Visit Summaries to staff at Heartland of Charleston, but also to a supervisor. While Defendants claim to have a quality assurance committee *they have not offered any evidence* of by-laws or any other support to the Court to establish that such committee is a "review organization" as defined in W.Va. Code, 30-3C-1. *

---

[4] ManorCare acknowledged at the September 4, 2014, hearing that it initially argued quality assurance, or peer review, privilege over documents it was not sure existed. The circuit court commented that it was problematic how a party can assert and argue that a document is protected by such a privilege "when they have never seen it nor do they even believe that it exists."

\* \*

> [T]he Court finds that the "Center Visit Summaries" are being sought from a non-review organization, or in other words, from an original source. Accordingly, the Defendants *have not provided evidence* to demonstrate their asserted Quality Assessment and Assurance Committee qualifies under W.Va. Code, 30-3C-1 such that an *in camera* review of these documents would be required.

(Emphasis added)

ManorCare asks this Court for relief in prohibition from the November 7, 2014, and February 2, 2015, orders directing ManorCare to produce the Center Visit Summaries.[5]

**B.**
**Discovery Requests Concerning the Board of Directors Briefing Packets**

Hanna also served two requests for production pursuant to Rule 34 of the *West Virginia Rules of Civil Procedure* designated Corporate Requests for Production and Corporate II Requests for Production. The documents Hanna sought (collectively "Briefing Packets") consisted of reports and meeting minutes received by the board of directors of each

---

[5] On March 11, 2015, this Court granted ManorCare's motion for leave to include a document in the appendix record that was not part of the lower court record. The document is the "Practice Guide" to ManorCare's Quality Assurance and Performance Improvement Program. The Practice Guide describes the purpose, structure and processes of the Program at the facility level and the regional and divisional levels. ManorCare states that Heartland of Charleston's peer review committee was part of ManorCare's Quality Assurance and Performance Improvement Program.

ManorCare corporate entity relating to the decedent's residency at Heartland of Charleston.[6]

Once again, the requests specified that "a statement of the specific basis on which privilege is claimed" was to be furnished by ManorCare for any document withheld under a claim of privilege or other exemption from discovery. In response, ManorCare asserted that the Briefing Packets were protected from discovery pursuant to the attorney-client privilege. Accordingly, ManorCare filed a privilege log showing the name and date of each Briefing Packet and the Briefing Packet's source and custodian.

---

[6] Request numbers 7 and 8 in the Corporate Requests for Production and Request numbers 3, 4 and 6 of the Corporate II Requests for Production are at issue in this proceeding:

*Request for Production No. 7*: Any and all reports and other documents received by the Board of Directors of each separate Defendant pertaining to the facility either individually or on a consolidated basis, during any portion of Sharon Hanna's residency.

*Request for Production No. 8*: Any and all reports and other documents received by the Board of Directors of each separate Defendant pertaining to the Defendants' West Virginia operations either individually or on a consolidated basis, during any portion of Sharon Hanna's residency.

*Request for Production No. 3*: Any and all reports and other documents received by the Board of Directors of each separate Defendant pertaining to the facility either individually or on a consolidated basis for 2010 through 2012.

*Request for Production No. 4*: Any and all other reports and other documents received by the Board of Directors of each separate Defendant pertaining to the Defendants' West Virginia operations either individually or on a consolidated basis for 2010 through 2012.

*Request for Production No. 6*: Copies of any and all Board of Director meeting minutes for any of the separate Defendants for 2010 through 2012.

In August 2014, Hanna filed two Rule 37 motions to compel production of the Briefing Packets sought under his Corporate Requests for Production and Corporate II Requests for Production. Hanna sought the information to determine whether the ManorCare entities were undercapitalized holding companies or whether, and to what extent, the entities exercised control over the operation of Heartland of Charleston. During a subsequent hearing, the circuit court orally granted the motions to compel, followed by the entry of an order granting the motions on November 7, 2014.[7] The circuit court did not conduct an *in camera* proceeding concerning the documents comprising the Briefing Packets. Instead, the November 7, 2014, order provided that "the Court is ordering that [ManorCare] redact only that portion of the Board of Director Meeting Minutes labeled as 'Legal Reports' which provides legal advice."[8]

Thereafter, Hanna filed Rule 37 motions to compel compliance with the November 7, 2014, order. A hearing was conducted on January 21, 2015, during which ManorCare argued

---

[7] The November 7, 2014, order granting Hanna'a motions to compel production of the Briefing Packets is separate from the November 7, 2014, order which directed ManorCare to produce the Center Visit Summaries.

[8] The Briefing Packets ManorCare was directed to produce corresponded to Hanna's Request numbers 7 and 8 in the Corporate Requests for Production and Request numbers 3, 4 and 6 of the Corporate II Requests for Production. *See* n. 6, *supra.* The November 7, 2014, order stated that production of the documents would be made "pursuant to an agreed protective order" between the parties. *See* W.Va. R. Civ. P. 26(c) (addressing protective orders).

10

that the circuit court should order that the Briefing Packets be submitted for an *in camera* proceeding to determine the status of the Packets under the attorney-client privilege. Following the hearing, the circuit court entered an order on February 12, 2015. The order directed ManorCare to produce the Briefing Packets as discovery material, subject to ManorCare redacting "only that portion of the documents that qualify as legal advice of counsel pursuant to the attorney-client privilege as well as any attorney work product contained in these documents."

ManorCare asks this Court for relief in prohibition from the November 7, 2014, and February 12, 2015, orders directing ManorCare to produce the Briefing Packets.

## II.
## Standards of Review for Relief in Prohibition

This Court has original jurisdiction in prohibition proceedings pursuant to art. VIII, § 3, of the *Constitution of West Virginia*. In considering whether to grant relief in prohibition, this Court stated in the syllabus point of *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925): "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." *Accord* syl. pt. 1, *State ex rel. Progressive Classic Ins. Co. v. Bedell* , 224 W.Va. 453, 686 S.E.2d 593 (2009).

11

In the current matter, in which ManorCare contends that the circuit court exceeded its

jurisdiction in ordering the production of documents, the relevant guidelines are found in

*State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Syllabus point 4 of

*Hoover* states:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Accord State ex rel. Fillinger v. Rhodes*, 230 W.Va. 560, 564, 741 S.E.2d 118, 122 (2013);

syl. pt. 2, *State ex rel. West Virginia Nat'l Auto Ins. Co. v. Bedell*, 223 W.Va. 222, 672 S.E.2d

358 (2008).

Finally, we note that, while most discovery orders are reviewable by this Court only

after final judgment, prohibition may be available where the orders concern the disclosure of

potentially privileged information. *See State ex rel. Charles Town Gen. Hosp. v. Sanders*, 210

W.Va. 118, 123, 556 S.E.2d 85, 90 (2001).

# III.
## Discussion

## A.
## The Center Visit Summaries

ManorCare contends that the circuit court exceeded its jurisdiction by failing to conduct an *in camera* proceeding to determine whether the peer review privilege excludes the Center Visit Summaries from discovery. The primary authority bearing on that question is this State's *Health Care Peer Review Organization Protection Act*, *W.Va. Code*, 30-3C-1 [2004], *et seq*.

Under the Act, confidentiality and immunity from liability are made a part of the health care peer review process to facilitate the evaluation of health care practitioners. Syllabus point 2 of *Young v. Saldanha*, 189 W.Va. 330, 431 S.E.2d 669 (1993), confirms: "The enactment of West Virginia Code §§ 30-3C-1 to -3 (1993) clearly evinces a public policy encouraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." *Accord* syl. pt. 6, *State ex rel. Charles Town Gen. Hosp.*, *supra*; *Mahmoodian v. United Hosp. Center, Inc.*, 185 W.Va. 59, 65, 404 S.E.2d 750, 756, *cert. denied*, 502 U.S. 863 (1991); Thomas J. Hurney, Jr. & Rob J. Aliff, *Medical Professional Liability in West Virginia*, 105 W.Va. L.Rev. 369,

443 (2003).

The phrase "peer review" is defined in *W.Va. Code*, 30-3C-1 [2004], as

the procedure for evaluation by health care professionals of the quality and efficiency of services ordered or performed by other health care professionals, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review and patient safety review.

The phrase "health care professionals," referenced in the "peer review" definition, is explained in *W.Va. Code*, 30-3C-1 [2004], as "individuals who are licensed to practice in any health care field and individuals, who, because of their education, experience or training participate as members of or consultants to a review organization."[9]

---

[9] "Review organization" is comprehensively defined in *W.Va. Code*, 30-3C-1 [2004], as follows:

"Review organization" means any committee or organization engaging in peer review, including a hospital utilization review committee, a hospital tissue committee, a medical audit committee, a health insurance review committee, a health maintenance organization review committee, hospital, medical, dental and health service corporation review committee, a hospital plan corporation review committee, a professional health service plan review committee or organization, a dental review committee, a physicians' advisory committee, a podiatry advisory committee, a nursing advisory committee, any committee or organization established pursuant to a medical assistance program, the Joint Commission on Accreditation of Health Care Organizations or similar accrediting body or any entity established by such accrediting body or to fulfill the requirements of such accrediting body, any entity established pursuant to state or federal law for

Confidentiality of the peer review organization's records is provided by *W.Va. Code*, 30-3C-3 [1980]. Confidentiality under the statute, however, is subject to the "original source" exception. *W.Va. Code*, 30-3C-3 [1980], provides in relevant part:

> The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization[.]

In *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421 S.E.2d 264 (1992), the plaintiff in a medical malpractice action sought relief in prohibition in this Court from the enforcement

---

peer review purposes, and any committee established by one or more state or local professional societies or institutes, to gather and review information relating to the care and treatment of patients for the purposes of: (i) Evaluating and improving the quality of health care rendered; (ii) reducing morbidity or mortality; or (iii) establishing and enforcing guidelines designed to keep within reasonable bounds the cost of health care. It shall also mean any hospital board committee or organization reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto, and any professional standards of review organizations established or required under state or federal statutes or regulations.

*See also W.Va. Code*, 16-5C-2(h) [1997], concerning nursing homes, providing a similar definition of peer review, or quality assurance, organization.

of an order denying access to certain hospital records. Access to the records was denied upon the hospital's blanket claim of peer review privilege under *W.Va. Code*, 30-3C-1, *et seq*. Granting relief to the plaintiff, this Court determined in *Shroades* that the circuit court should have conducted an *in camera* proceeding to determine whether the requested documents were privileged. The relevant principle was expressed, in *Shroades,* in syllabus point 2: "The determination of which materials are privileged under *W.Va. Code*, 30-3C-1 [1975], *et seq*. is essentially a factual question and the party asserting the privilege has the burden of demonstrating that the privilege applies." *Accord* syl. pt. 1, *Saldanha*, *supra*.

In syllabus point 3, *Shroades* also addressed the "original source" exception found in *W.Va. Code*, 30-3C-3:

> *W.Va. Code*, 30-3C-3 [1980] provides that "[t]he proceedings and records of a review organization shall be confidential . . . Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such [a review] organization . . . ." The language of the statute grants a privilege to all the records and proceedings of a review organization, but no privilege attaches to information, documents or records considered by a review organization if the material is "otherwise available from original sources."

*Accord* syl. pt. 2, *State ex rel. Brooks v. Zakaib*, 214 W.Va. 253, 588 S.E.2d 418 (2003); syl. pt. 3, *State ex rel. Charles Town Gen. Hosp.*, *supra*.

16

*Shroades* emphasized that, where the asserted privileged documents are identified in terms of a "committee," the circuit court should examine the health care provider's by-laws to determine whether the committee or organization is a "review organization" as defined in *W.Va. Code*, 30-3C-1. 187 W.Va. at 728-29, 421 S.E.2d at 269-70. In *Shroades*, the plaintiff sought documents from various hospital committees, including the quality assurance committee and the pharmacy and therapeutics committee. This Court determined, in *Shroades*, that, *based on the hospital's by-laws, while the quality assurance committee qualified as a peer review organization, more information was needed to clarify whether the pharmacy and therapeutics committee had actually engaged in peer review*. Thus, the *Shroades* opinion concluded that "when the by-laws do not clearly indicate that peer review is a function of the committee, the party asserting the privilege has the burden of presenting additional information." 187 W.Va. at 729, 421 S.E.2d at 270.[10]

Here, soon after the action was filed, Hanna served the first request for production of the Center Visit Summaries and specified that ManorCare was to furnish the basis of any privilege claimed with regard to the documents sought. Approximately two months later, without confirming the existence of the Summaries, ManorCare asserted the peer review

---

[10] *See* William D. Bremer, Annotation, *Scope and Extent of Protection From Disclosure of Medical Peer Review Proceedings Relating to Claim in Medical Malpractice Action*, 69 A.L.R.5th 559 § 7 (1999) (Stating that *Shroades* relied on the hospital's by-laws to determine that the hospital's quality assurance committee was a review organization under *W.Va. Code*, 30-3C-1.).

17

privilege. In February 2014, Hanna filed a motion to compel, and on May 12, 2014, the circuit court directed ManorCare to produce the Summaries. Later, Hanna filed a motion to compel compliance with the May 12, 2014, order, and ManorCare filed a privilege log listing the Center Visit Summaries. On November 7, 2014, the circuit court entered an order granting Hanna's motion to compel compliance with the May 12, 2014, order.

The November 7, 2014, order stated that ManorCare "failed to put forth any evidence that a quality assurance committee existed or that the documents at issue were submitted to any such quality assurance committee." The circuit court subsequently denied ManorCare's motion to alter or amend on February 2, 2015, and stated that while ManorCare, *et al.*, "claim to have a quality assurance committee they have not offered any evidence of by-laws or any other support to the Court to establish that such committee is a 'review organization' as defined in W.Va. Code, 30-3C-1."

More than mere assertions are required to establish the peer review privilege under the *Health Care Peer Review Organization Protection Act. See* Thomas J. Hurney, Jr. & Rob J. Aliff, *Medical Professional Liability in West Virginia*, 105 W.Va. L.Rev. 369, 444 (2003) ("Blanket assertions of privilege are generally not sufficient to invoke the peer review privilege."). As *Shroades* confirms, ManorCare had the burden of demonstrating to the circuit court that the privilege applies to the request for the Center Visit Summaries.

18

If it had conducted the *in camera* hearing ManorCare demands, the circuit court would have been required to do the work of meeting ManorCare's burden of establishing that it has a peer review organization as defined in *W.Va. Code*, 30-3C-1 [2004]. Stated differently, without first establishing the existence of the review organization, ManorCare cannot seek to encumber the circuit court with examining documents, not to determine which parts are privileged, but to determine whether the peer review privilege applies in the first place. Hanna argues persuasively: "Such a time consuming judicial exercise may not even provide the trial court with the necessary evidence to establish the existence of a privilege, as often extrinsic evidence is required."

Consequently, the present situation is manifestly different from the requirement expressed in *State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, 222 W.Va. 37, 658 S.E.2d 728 (2008), discussed *infra*, that an *in camera* hearing must be held concerning a claimed privilege where a motion to compel or a motion for a protective order is filed. This Court, in *Kaufman*, did not have before it the *Health Care Peer Review Organization Protection Act*, *W.Va. Code*, 30-3C-1 [2004], *et seq*. In the limited area of the law covered by the Act, the peer review privilege presupposes the existence of a peer review organization.

Specifically, in both the November 7, 2014, and February 2, 2015, orders, the circuit court found that ManorCare failed to establish the existence of a peer review organization.

19

ManorCare argues that the Center Visit Summaries owe their existence to Heartland's peer review committee, the processes of which are governed by the Practice Guide under ManorCare's Quality Assurance and Performance Improvement Program. However, not only did ManorCare make that argument significantly late in the discovery process, the argument is fallacious because ManorCare never submitted the Practice Guide for the Program to the circuit court, or any by-laws to establish a peer review privilege.

Although ManorCare asserts that it was "prepared" to submit the Practice Guide for the Quality Assurance and Performance Improvement Program to the circuit court, it did not, in spite of the availability of the Practice Guide and ample opportunity to make sure that the Guide and any other relevant by-laws were filed below. Instead, ManorCare filed the Practice Guide for the first time in this Court in conjunction with the requested relief in prohibition. *See* n. 5, *supra*. Under *Shroades*, without any by-laws or "additional information," the circuit court was "greatly at sea without a chart or compass" in the face of ManorCare's demand for an *in camera* hearing. *Workman v. Workmen's Compensation Comm'r*, 160 W.Va. 656, 662, 236 S.E.2d 236, 240 (1977).

It is, therefore, unnecessary to engage in an extended discourse concerning the "original source" exception to the peer review privilege. In support of its motion to alter or amend the November 7, 2014, order, ManorCare submitted the affidavit of Martha

Blankenship, a former director of nursing at Heartland of Charleston. Blankenship indicated that Heartland had a Quality Assessment and Assurance Committee which served as a peer review organization and which had exclusive use of the Center Visit Summaries. Hanna insisted, however, that the Summaries were outside the scope of peer review. Moreover, ManorCare acknowledged that it was unaware of the Center Visit Summaries until the June 11, 2014, deposition in an unrelated action of nurse consultant Debra Blair. Blair's deposition is included in the appendix record before this Court, and her testimony was less certain than Blankenship's that the Summaries were exclusively for peer review purposes.[11] Compare *State ex rel. Brooks v. Zakaib*, *supra*, noting that it was undisputed that the documents at issue

---

[11] During her deposition Blair testified:

> Q. So during that whole time frame that you were CSC [Clinical Service Consultant], you have no idea whether your reports were being used in the quality assurance capacity or not; is that fair?
> A. That is correct.
> Q. You may have been told that's what they're supposed to do, but you don't know that to be true.
> A. That's true.

Moreover, Blair sent a copy of each consultant report to Rebecca Jablon, the Director of Clinical Services, who had an office in the Toledo, Ohio, area and was Blair's immediate supervisor. As Blair testified:

> Q. Who else would get these reports? What about Ms. Jablon?
> A. Yes. She would get that as well as I would give one to the Administrator and the Director of Nursing. * * *
> Q. Ms. Jablon, was she part of the Quality Assurance Committee at the facilities?
> A. Not to my knowledge.

were generated during the hospital's peer review process. 214 W.Va. at 261, 588 S.E.2d at 426.[12]

In the February 2, 2015, order denying ManorCare's motion to alter or amend, the circuit court determined that the Center Visit Summaries were sought by Hanna from an original source. Because of ManorCare's failure to establish a peer review organization

---

[12] As noted, ManorCare filed the Practice Guide to its quality assurance program for the first time in this Court in support of its petition for a writ of prohibition. Since the circuit court did not have the benefit of the Guide, its provisions were of no moment concerning the ordered production of the Center Visit Summaries.

We observe, however, that the Practice Guide essentially facilitates the oversight and quality management of ManorCare's operations by bringing together various committee participants. For example, each ManorCare center or facility has a Quality Assessment and Assurance Committee which meets monthly. The Committee must include the center's administrator, the administrative director of nursing services, a physician and at least three other center staff members responsible for direct patient care and services. Optional members may come from positions other than management and include: (1) pharmacist, (2) dietary services, (3) social services, (4) maintenance, (5) nursing assistant, (6) housekeeping, (7) activities, (8) licensed nurse, (9) admissions and (10) human resources.

*W.Va. Code*, 30-3C-1 [2004], states that "peer review" means the procedure for evaluation "by health care professionals" of the services of "other health care professionals." Here, the circuit court did not have an opportunity to consider whether the phrase "health care professionals" would include individuals engaged in dietary services (food preparation); social services (social activities); maintenance (carpenters and electricians); housekeeping (janitors); admissions; or human resources. Thus, without further development in the circuit court, we need not preemptively settle the question of how ManorCare would have applied the Practice Guide in relation to the decedent's residency at Heartland, in conjunction with the definition of "peer review" in *W.Va. Code*, 30-3C-1 [2004].

22

through by-laws or additional information, the information sought by Hanna necessarily emanated from a non-privileged source and would be subject to production.

The circuit court did not exceed its jurisdiction in entering the orders of November 7, 2014, and February 2, 2015. Accordingly, ManorCare is not entitled to relief in prohibition.

**B.**
**The Briefing Packets**

In his Corporate Requests for Production and Corporate II Requests for Production, Hanna sought ManorCare's Briefing Packets which contained documents received by the board of directors of each ManorCare corporate entity relating to the decedent's residency at Heartland. ManorCare replied that the Briefing Packets were protected from discovery by the attorney-client privilege.[13] ManorCare filed a privilege log with the circuit court showing the name and date of each Briefing Packet and the Briefing Packet's source and custodian. The log indicates that the documents largely consisted of reports from ManorCare's general counsel.

Hanna's subsequent motions to compel production of the Briefing Packets were granted by orders entered by the circuit court on November 7, 2014, and February 12, 2015.

---

[13] Although raised below, ManorCare does not address the work-product doctrine in its request for relief in prohibition.

Both orders directed ManorCare to redact the portions of the documents qualifying as "legal advice." The circuit court rejected ManorCare's insistence that the Briefing Packets be submitted for an *in camera* proceeding to determine the status of the Packets under the attorney-client privilege. ManorCare seeks relief in prohibition in this Court from the November 7, 2014, and February 21, 2015, orders.

In syllabus point 2 of *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979), this Court set forth the fundamental elements which must be present in order to assert the attorney-client privilege: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and the client must be intended to be confidential." *Accord* syl. pt. 7, *State ex rel. Medical Assurance of W.Va., Inc. v. Recht*, 213 W.Va. 457, 583 S.E.2d 80 (2003). Accordingly, the burden of establishing the attorney-client privilege rests with the person asserting it. Syl. pt. 3, *State ex rel. United Hosp. Center, Inc. v. Bedell*, 199 W.Va. 316, 484 S.E.2d 199 (1997). Moreover, it is universally true that corporations are entitled to claim the attorney-client privilege. *See* Alexander C. Black, Annotation, *What Corporate Communications are Entitled to Attorney-Client Privilege - Modern Cases*, 27 A.L.R.5th 76 § 2 (1995).[14]

---

[14] *See also* 9A *Fletcher Cyclopedia of the Law of Corporations* § 4670 (Cum. Supp. 2014-15), stating in part:

Asserting that the Briefing Packets included legal advice from its general counsel, ManorCare contends that it was inappropriate for the circuit court to require it to unilaterally redact portions of the documents. ManorCare asserts that, instead, the circuit court should have examined the Packets in an *in camera* proceeding to determine their status under the attorney-client privilege.

Syllabus point 6 of *State ex rel. U.S. Fidelity and Guaranty Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995), states: "Unless obviously correct or unreviewably discretionary, rulings requiring attorneys to turn over documents that are presumably prepared for their clients' information and future action are presumptively erroneous." *Accord State ex rel. Westfield Ins. Co. v. Madden*, 216 W.Va. 16, 20, 602 S.E.2d 459, 463 (2004). *See* F. D. Cleckley, R. J. Davis, L. J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, p. 693 (4th ed. 2012). That admonition foreshadowed this Court's opinion in *State ex rel. Nationwide Mut. Ins. Co. v. Kaufman*, *supra*.

*Kaufman* involved a motor vehicle accident and an insured defendant who sought relief in prohibition in this Court to prevent the production of communications between the

---

The attorney-client privilege extends to a corporation or other organization or association, which must act through agents, including its officers and employees. Therefore, the privilege belongs to the institution and covers confidential communications between the entities' attorneys and its employees.

defendant and his insurance company. The defendant alleged that the communications were excluded from discovery by the attorney-client privilege and the work product doctrine. The ordered production, however, was for the purpose of allowing the circuit court to review the documents *in camera* under the claimed privileges. In *Kaufman*, this Court denied relief in prohibition and set the standard in syllabus point 2:

> The general procedure involved with discovery of allegedly privileged documents is as follows: (1) the party seeking the documents must do so in accordance with the reasonable particularity requirement of Rule 34(b) of the West Virginia Rules of Civil Procedure; (2) if the responding party asserts a privilege to any of the specific documents requested, the responding party shall file a privilege log that identifies the document for which a privilege is claimed by name, date, custodian, source and the basis for the claim of privilege; (3) the privilege log should be provided to the requesting party and the trial court; and (4) if the party seeking documents for which a privilege is claimed files a motion to compel, or the responding party files a motion for a protective order, the trial court must hold an in camera proceeding and make an independent determination of the status of each communication the responding party seeks to shield from discovery.

*Accord* syl. pt. 4, *State ex rel. Nationwide Mut. Ins. Co. v. Marks*, 223 W.Va. 452, 676 S.E.2d 156 (2009).

ManorCare relies on *Kaufman* for the proposition, under subsection (4), that an *in camera* hearing is <u>mandatory</u> where, as in the present controversy, a privilege log and motions to compel have been filed regarding the alleged privileged documents. We find ManorCare's position persuasive. Unlike the avenues of consideration regarding the Center Visit

26

Summaries narrowed by statutory factors defining peer review, no such limits pertain to the procedure under *Kaufman* regarding the Briefing Packets. This Court is of the opinion, therefore, that the circuit court exceeded its jurisdiction by failing to conduct the mandatory *in camera* proceeding to review the Briefing Packets.

## IV.
## Conclusion

This Court concludes that ManorCare's requested relief concerning the Center Visit Summaries is without merit. Consequently, we decline to grant relief in prohibition from the orders pertaining to the Summaries entered on November 7, 2014, and February 2, 2015.

However, this Court is of the opinion that the circuit court exceeded its jurisdiction in ordering production of the board of director Briefing Packets. The circuit court should have conducted an *in camera* proceeding to make an independent determination on whether the Briefing Packets are excluded from discovery pursuant to the attorney-client privilege. Accordingly, we grant relief in prohibition with respect to the orders pertaining to the Briefing Packets entered on November 7, 2014, and February 12, 2015.

**Writ Granted as Moulded.**

27